MAY TERM, 1906. 439

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

## CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY *v.* RAILROAD COMMISSION OF INDIANA.

[No. 1 Railroad Commission. Filed June 27, 1906.]

1. APPEAL AND ERROR.—*Jurisdiction.—Void Statute.—Want of Jurisdiction in Trial Court.*—The Appellate Court has no jurisdiction to determine an appeal taken under a void statute or taken from the judgment of a trial court without any jurisdiction to render the judgment appealed from. p. 448.

2. SAME.—*Railroad Commission.—Special Statute.* — Appeals taken from the action of the railroad commission to the Appellate Court are taken under the special statute (Acts 1905, p. 83), and not under the general statutes providing for appeals. p. 449.

3. RAILROADS.—*Rates.—Companies' Power to Fix.—Rights of State.*—Although the statute (§5153 Burns 1901, §3903 R. S. 1881) has given railroad companies the power to fix rates, nevertheless the legislature has the power to regulate and fix such rates. p. 450.

4. SAME.—*Rates.—Power to Fix.*—The legislature may prescribe railroad rates itself, delegate the power to a commission or give the power to the railroad companies, but such rates by whomsoever made, must be reasonable. p. 450.

5. SAME.—*Rates.—Recovery of Unreasonable.*—The shipper may recover from a railroad company charges in excess of a reasonable rate. p. 450.

6. SAME.—*Rates.—Railroad Commission.—Power to Determine.*—Under the act of 1905 (Acts 1905, p. 83), it is the duty of the railroad commission, when a complaint in writing is filed, alleging that a rate is unreasonable, to determine such question, and, if such rate is found unreasonable, to set it aside and establish a reasonable one. p. 450.

7. CONSTITUTIONAL LAW.—*Fourth Coördinate Department of Government.—Power of Legislature to Create.—Railroad Commission.*—The legislature has no power to create a fourth coördinate department of government; and the powers of the railroad commission (Acts 1905, p. 83) are neither wholly legislative nor executive, but partly *quasi*-judicial. p. 452.

8. RAILROADS.—*Rates.—Railroad Commission.—Powers.—Review by Courts.*—Rates fixed by the railroad commission under the act of 1905 (Acts 1905, p. 83) are subject to review by the courts on the ground of unreasonableness, such question being a judicial one for the courts. Black, J., dissenting. p. 453.

9. APPEAL AND ERROR. — *Boards of Commissioners.* — *General Statute for Appeals.*—*Rights Under.*—Under a general statute for appeals from the boards of commissioners appeals may be taken, unless prohibited by some special statute, from any decision involving judicial action, but not from a decision involving administrative, ministerial or discretionary powers. p. 455.

10. SAME.—*Boards of Commissioners.*—*Administrative Powers.* —*Appeals from.*—*Special Statute.*—Appeals may be taken from decisions of boards of commissioners on administrative, ministerial or discretionary matters where authorized by a special statute. p. 455.

11. COURTS.—*Appellate.*—*Jurisdiction.*—*Original.*—Prior to 1905 (Acts 1905, p. 83) the Appellate Court was never invested with original jurisdiction. p. 456.

12. CONSTITUTIONAL LAW.—*Appellate Court.*—*Original Jurisdiction.*—The Appellate Court, established by the legislature, may be invested with original jurisdiction. p. 457.

13. SAME.—*Appellate Court.*—*Railroad Commission.*—*Rates.*— While the legislature may not prescribe administrative duties for the courts as such to perform, still, the question of the reasonableness of a railroad rate, fixed by the railroad commission, being a judicial question, the determination of such question may properly be lodged in the Appellate Court. p. 457.

14. APPEAL AND ERROR.—*Appellate Court.*—*Procedure.*—*Legislative Power.*—The legislature has the power to prescribe the procedure in cases in which it invests the Appellate Court with original jurisdiction. p. 459.

15. CONSTITUTIONAL LAW.—*Courts.*—*Delegation of Power to Non-Judicial Body to Hear Evidence and Report Decision.*— The legislature has power to delegate to the railroad commission the power to hear the evidence and render its decision on the question of the reasonableness of a railroad rate, and such decision on such question does not preclude the Appellate Court from an examination and determination of such question from such evidence, such proceeding being analogous to that of a master commissioner. p. 459.

16. APPEAL AND ERROR.—*Railroad Commission.*—*Motion to Dismiss Petition.*—The constitutional validity of the railroad commission law (Acts 1905, p. 83) will not be determined upon a motion in the Appellate Court to dismiss the petition before such commission, upon which the commission's action was founded. Wiley, J., *contra.* p. 460.

From Railroad Commission of Indiana; *Union B. Hunt,* Chairman, *William J. Wood* and *C. V. McAdams,* commissioners.

Appeal by the Chicago, Indianapolis & Louisville Railway Company from the action of the Railroad Commission of Indiana in fixing a rate and prescribing the way-billing of cars. On motion to dismiss appeal. *Motion overruled.* (For final decision, see 39 Ind. App. —.)

*E. C. Field* and *H. R. Kurrie,* for appellant.

*C. V. McAdams,* for the commission.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, H. M. Dowling* and *W. C. Geake, amici curiae.*

Robinson, C. J.—This is an appeal to review the action of the Railroad Commission of Indiana in fixing a rate on coal, and also an order of the commission forbidding the way-billing of cars loaded with coal at their marked capacity when such cars would not hold the marked capacity when fully loaded.

This case arose out of proceedings taken by the commission under the act of the legislature approved February 28, 1905 (Acts 1905, p. 83, §5405a *et seq.* Burns 1905), entitled: "An act providing for the creation of a railroad commission, the appointment and compensation of the members thereof, prescribing the powers and duties of such commission and its members, prescribing certain duties and obligations of railroad companies, express companies and other common carriers, defining certain misdemeanors and prescribing penalties, providing for the collection of penalties by civil action from railroad companies and other common carriers by the State in cases therein provided for, appropriating money to carry out its provisions, providing for a review of the decisions of the commission and conferring jurisdiction on certain courts to hear and determine such proceedings, and repealing all laws and parts of laws in conflict therewith."

The first and second sections of the act create the commission, provide for the appointment of three commission-

ers, prescribe the qualifications, terms and salaries of the commissioners, the organization of the commission and where its sessions may be held.

The third section vests the commission with power and authority to supervise all railroad freight and passenger tariffs; to regulate car service and the transfer of cars from one road to another, and to supervise charges therefor; to require and supervise the location and construction of sidings and connections between railroads, and the crossing of tracks and side-tracks of railroads by other railroads, vesting in the commission the authority now vested in the Auditor of State with reference to crossings and interlocking appliances; to supervise and regulate private car-line service and private tracks where the same are used in connection with any railroad in the State; to correct abuses and prevent unjust discrimination and extortion in freight and passenger tariffs on the different railroads, and to enforce the same by proceedings for the enforcement of penalties provided by law through courts of competent jurisdiction. The commission is also given power, upon failure of the railroads so to do, to fix and establish for all connecting lines reasonable joint rates of freight, transfer and switching charges; to fix the pro rata part of charges to be received by each of the two or more connecting roads, where such roads fail to agree; from time to time to alter, change, amend or abolish any classification or rate established by any company whenever found to be unjust or discriminative; to enforce reasonable and just rates for the use or transportation of loaded or empty cars and for storing and handling freight; to enforce reasonable rates for the transportation of passengers, and tolls or charges for all other service performed by any railroad company subject to the provisions of the act; to adopt and enforce such rules, regulations and modes of procedure as it may deem proper; to hear and determine complaints made against classifications or rates maintained by common carriers, or against

the rules, regulations and determinations of the commission. This section also provides that its provisions shall be construed to mean that the commission shall have power to correct, alter, change or establish rates, charges, classifications, rules or regulations, where such companies fail to have just and reasonable and undiscriminative rates, charges, classifications, rules and regulations in effect, and shall exercise such power only where some person or corporation injuriously affected by such rate, charge, classification, rule or regulation, shall have filed with the commission a written verified complaint setting forth the unreasonable character of the rate, charge, classification, rule or regulation complained of, when the commission shall proceed to consider the reasonableness of the same and shall make such corrections, alterations, changes or new regulations, as may be necessary.

The fourth section provides for notice to the company, before rates or charges are revised or changed, for a hearing, that the commission may adopt rules to govern its proceedings, subpœna witnesses and order the production of books and papers, etc.

The fifth section reads: "In all actions between private parties and railroad companies or private car-line companies brought under this law, the rates, charges, orders, rules, regulations and classifications approved by or made by said commission before the institution of such action shall be held, deemed and accepted to be reasonable, fair and just, and in such respects shall not be controverted therein except as hereinafter provided until finally found otherwise in a direct action brought for that purpose in the manner prescribed by sections six, six and one-half and seven hereof."

The sixth section provides that if any railroad company or party in interest be dissatisfied with any rate, classification, rule, charge or general regulation made, such company or party may procure a complete transcript of all the

proceedings of the commission relative thereto, and also a copy of all the evidence heard, which evidence shall be incorporated into such transcript, and such company or party may file such transcript, with a concise written statement of its or his causes of complaint against the action of the commission, in the office of the Clerk of the Appellate Court, who shall, after certain requirements as to notice are complied with, "place said cause upon the docket of the said Appellate Court for hearing and determination. The commission shall be made a party to such proceeding in the Appellate Court, and shall defend the same. All such causes shall be given precedence over all other civil causes in said Appellate Court, and shall be heard and determined upon the transcript filed as aforesaid, as speedily as possible to the end that public interests may not suffer by reason of such appeal. Jurisdiction to hear and determine such appeals, and power to adopt rules of procedure to facilitate the speedy determination thereof not inconsistent with this act, are hereby conferred upon the Appellate Court of Indiana. The Appellate Court shall have power to affirm the action of the commission appealed from, or to change, modify or set aside the same as justice may require. The decision of the Appellate Court in any such matter shall be final, and said commission shall keep copies of all such findings and judgments on file in its office."

The sixth section further provides that if the company or party in interest be dissatisfied with any order or regulation respecting the location or construction of sidings, switches or connections between railroads, or the crossing of one railroad by another, or the transfer or switching of cars at junction points, or the regulation of private tracks, such company or party may file a petition in the circuit or superior court of the particular county, setting forth the objections to the order, and after the requirements as to notice are complied with the case shall be set for hearing, "and shall be heard and determined as a suit in equity,

without a jury." The court may affirm the action of the commission, or change, modify or set the same aside. Either party may appeal from the finding and judgment to the Appellate Court in the same manner that appeals are prosecuted in civil cases from judgments of circuit and superior courts.

Section six and one-half provides: "All orders of the commission made and entered upon its records as herein provided respecting rates, charges, rules, regulations and classifications, or respecting the location or construction of sidings or connections between railroads, or to the crossing of one railroad by another, or the transfer and switching of cars at junction points, or the regulation of private tracks, shall be operative and in full force at and from the time fixed therefor by the commission as hereinafter provided, until any such order shall have been changed, modified or set aside by a circuit, superior or appellate court under the proceedings provided for in section six of this act: Provided, however, that if at the time of filing a transcript" in the Appellate Court, appealing from the fixing of any rate, the company filing such petition may, upon filing a bond specified, charge and collect the rate that existed before the making of the order by the commission, until such proceeding is finally determined; and if the company files the bond and continues to charge the old rate it shall give each person paying the old rate a certificate showing the amount received and the rate charged and containing a promise to refund the difference if the new rate is sustained by the Appellate Court. A penalty is provided for failure to comply, within a fixed time, with the promises contained in the certificate.

The seventh section provides that in all trials under section six "the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulations, orders, classifications, acts or charges complained of are unreasonable and unjust to it or them."

Section eight requires the commission to furnish the company with a copy of rates, rules, etc., and provides that the company shall not increase its rates except after ten days' notice to the commission. The first paragraph of section nine provides a penalty for failure to produce books, and the second makes it a misdemeanor for any officer or agent to fail to produce books. Section ten makes it a misdemeanor to fail to file a schedule of rates. Section eleven provides for interrogatories by the commission to the companies; makes a failure or refusal to answer, a misdemeanor; provides for annual reports to the Governor; for notice in certain cases to interstate commerce commission, and for certain limitations of the carrier's liability. Section twelve provides that the commission, in making any examination or investigation provided for in the act, has power to issue subpœnas for the attendance of witnesses, each witness to receive per diem and mileage, and, if any witness fails or refuses to obey such subpœna, the commission may apply to a court to issue an attachment and compel him to attend; and if a witness after being duly summoned or ordered by any court shall fail or refuse to attend or to answer any question propounded to him, and which he would be required to answer if in court, such court may fine and imprison. A witness is not excused from testifying on the claim that the testimony may tend to incriminate him. The commission and all parties to any investigation shall in all cases have the right, in its or their discretion to issue proper process and take depositions, as in civil cases, instead of compelling personal attendance of witnesses. Section thirteen provides a penalty for violation of fixed rates. Section fourteen defines unjust discrimination, fixes a penalty and provides for reduced rates in certain cases. Section fifteen makes false billing and rebating misdemeanors. Section sixteen authorizes a civil action for damages suffered through the

MAY TERM, 1906. 447

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

carrier's violation of the act. Sections seventeen and eighteen provide certain penalties. Section nineteen provides for admission in evidence of certified copies of rates made by the commission. Section twenty makes it the duty of the commission to see that this act and all railroad laws are enforced, and to cause to be instituted proper proceedings to prosecute violations.

Section twenty-one: "The terms 'road,' 'railroad,' 'railroad companies,' 'railroad corporations,' 'private car lines,' 'fast freight' or 'carrier,' as used herein, shall be taken to mean and embrace all corporations, companies, individuals and association of individuals, their lessees or receivers appointed by any court whatsoever, that may now or hereafter own, operate, manage or control any railroad or part of railroad in this State or any fast freight line or private car lines and express companies, and all such corporations, companies, and associations of individuals, their lessees or receivers that shall do the business of common carriers on any railroad in this State. (a) The provisions of this act shall be construed to apply to, and affect only the transportation of passengers, freight, express matter and cars between points within this State; and this act shall also apply to express companies: Provided, that this act shall not apply to street or interurban railroads, except as section three substitutes the railroad commission, created hereby for the Auditor of State, in respect to duties pertaining to the construction and maintenance of interlocking works at crossings of railroads and railroads operated by electricity."

Section twenty-two provides that the act "shall not have the effect to release or waive any right of action by the State or any person for the right, penalty or failure which may have arisen, or may hereafter arise under any law of this State; and all penalties accruing under this act shall be cumulative of each other, and a suit for or recovery of one shall not be a bar to the recovery of any other penalty."

448    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

Section twenty-three provides for certain reports and recommendations, by the commission, of road defects. Section twenty-four makes an appropriation to carry out the act. Section twenty-five repeals all conflicting laws.

The railroad commission moves to dismiss the appeal, on the ground, among others, that this court has no jurisdiction to hear such pretended appeal; that the appeal is not taken from the final judgment or decree of any court or body exercising judicial authority; that sections six and six and one-half of the act of 1905, *supra,* are in conflict with article three of the Constitution of Indiana. Appellant answers this motion by admitting the claim of appellee, that this court has no jurisdiction, and that the two sections named are invalid, but insists that the act is wholly void because, among other reasons, by section twenty-one, the act deprives certain railways of equal protection of the law. Appellant suggests that as there is a constitutional question involved the jurisdiction is in the Supreme Court.

The motions to dismiss are for want of jurisdiction in this court to determine the appeal. It is quite true that this court has no jurisdiction of this appeal if the

1. provision of the statute giving the right of appeal is invalid. And it is equally true that, although the provision giving the right to appeal be valid, this court has no jurisdiction of the merits of the appeal if the body making the order from which the appeal is taken had no jurisdiction to make the order. It is elementary that if the subordinate body is without jurisdiction the appellate body cannot gain it by an appeal. The appeal has been brought to this court as the statute directs. Its decision is made final. And while this court has not, in general appeals, any authority to pass on the constitutionality of a statute, yet under this statute it has been given exclusive appellate jurisdiction, and must necessarily pass upon such questions as go to the powers of the court to determine the appeal. The case does not come to this court under the

## MAY TERM, 1906. 449

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

general enactments establishing the court and pre-
2. scribing its jurisdiction, but is brought under a
special statute, which designates this court as the
tribunal to determine finally certain controversies arising
between the railroad commission and the persons or cor-
porations with whom it has to deal. The legislature cer-
tainly could not have intended that the jurisdiction of this
court should be final and conclusive in this particular class
of cases, and at the same time limited to a part only of
questions arising upon appeal. We cannot consider any
question presented by the appeal if there is no valid pro-
vision authorizing an appeal, nor can we consider any
questions presented if the appeal is taken from an order
itself invalid, because made under authority attempted to
be conferred by an invalid statute. The first question a
court must consider in the determination of a cause is that
of jurisdiction. The case originated and has been brought
to this court by virtue of an express statutory provision.
If there is no authority in the statute for the steps that have
been taken, no such authority exists. If the statute is void
it is as if it had not been enacted, and any proceeding had
under it by any court or by any tribunal is just as ineffec-
tive as would be the same proceeding without any attempted
statutory authority.

Section six authorizes the appeal if the party is dissat-
isfied with any rate, classification, rule, charge or general
regulation made, approved, adopted or ordered by the com-
mission. Complaint is made in this appeal of a rate made
by the commission, and also of what should perhaps be
called a rule made as to way-billing cars. But the argu-
ment is directed to the making of the rate.

In the able briefs filed by a member of the commission
on behalf of the commission, and by counsel for appellant
company, and by the Attorney-General, a thorough discus-
sion is had of the nature of the duty performed by the
commission in the proceedings prescribed for fixing a rate.

Under the general railroad law the legislature granted to railroads authority "to regulate the time and manner in which passengers and property shall be transported, and the tolls and compensation to be paid therefor." §5153 Burns 1901, §3903 R. S. 1881. Notwithstanding this grant of authority the legislature retains the right to regulate and to fix rates. *Railroad Commission Cases* (1886), 116 U. S. 307, 347, 6 Sup. Ct. 334, 29 L. Ed. 636. The legislature might exercise this right by itself fixing the rates; or it might delegate this duty to a commission acting upon its own initiative; or it might leave with the railroads themselves the right to fix rates under the original grant of authority, subject to regulations and restrictions imposed by a commission, and subject always to the requirement that the rate fixed must be reasonable. In enacting the statute under consideration the legislature followed the last-named method. The carrier had the right before the passage of the act to fix rates, and it has that right under the act. It was required before the act to make rates reasonable; it is required to do the same thing now. If, before the act, the carrier attempted to charge an unreasonable rate, the shipper could have redress through the courts. If the carrier attempts now to charge an unreasonable rate, a more prompt means of relief for such rate is given through a commission.

In determining whether a court may review the action of the commission in fixing a rate, the fact must be kept in view that the act gives the commission no power whatever to correct, alter, change or establish rates, except upon the filing of a written verified complaint setting forth the unreasonable character of the rate complained of; a hearing is given upon the complaint, after notice, and after such hearing the commission shall make such corrections, alterations, changes or new regulations as may be necessary to prevent injustice and discrimination

## MAY TERM, 1906. 451

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

to the party complaining; and when any such rate shall have been changed such order shall operate for the benefit of all persons or corporations situated similarly with the complaining party and on the line of the railroad complained of. The question which the commission tries is whether the rate fixed by the railroad and of which complaint is made is a just and reasonable rate. If it is not, the commission may, upon the evidence heard, fix a rate that is just and reasonable. If it is, the rate as fixed by the railroad stands. In the determination of this question of fact, witnesses may be subpœnaed and compelled to testify, testimony must be taken in shorthand, and all written and documentary evidence and all pleadings and other papers pertaining to the hearing shall be kept on file so that a complete transcript of all such proceedings, including the evidence, may be made whenever required. Or the commission and all parties may take depositions instead of compelling personal attendance of witnesses, as depositions are taken in civil cases. The act also makes provision for the payment of witness fees, out of the state treasury, and for the payment of officers for executing process. In short, the act gives the commission all the authority necessary to make the investigation as to the facts complete. And all the evidence before the commission and upon which its decision is made is required by the act to be kept in the office of the commission.

In the above particulars the act differs materially from railroad commission acts in some other states, where the commission is given summary supervision of rates. See *Chicago, etc., R. Co. v. Minnesota* (1890), 134 U. S. 418, 33 L. Ed. 970, 10 Sup. Ct. 462.

So that, before the commission can grant any relief from the rate fixed by the railroad, it must first find that the rate of which complaint is made, and which was fixed by the railroad, is unjust or unreasonable. And in doing this in the manner prescribed by section three of the act, the

452    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

commission pursues methods in many respects quite like that followed by the court, before the passage of the act, in giving relief from an unjust or unreasonable rate of which complaint was made. The first step necessarily taken in the one case is not materially different from the first step necessarily taken in the other. However, a further duty is placed upon the commission, after it has found the rate complained of to be unreasonable, and that is to fix a rate that is reasonable, and the reasonableness of the rate fixed and the unreasonableness of the rate set aside are determined upon the same hearing.

Under points and authorities it is stated, in the original brief of appellee commission, that the most convincing reason that the commission is not a court is the fact

7. that it is given authority to fix rates, which is purely a legislative duty. In the brief in reply to the State's brief, the position taken by the commission is, that the power exercised by it in making rates is an administrative or executive power, and the argument in the same brief opens with the statement that "the Railroad Commission of Indiana, for whose members the writer speaks, is one of the coördinate branches of the State government." The manner in which the statute requires the commission to proceed in disapproving a rate complained of, and fixing another to take its place, sufficiently shows that the power exercised is neither altogether legislative nor executive, and we know of no authority in the legislature to create a department of the state government in addition to those named in the Constitution. While the statute does not make the commission a court, and it is not a court, yet the act of setting aside the rate complained of—and this must be done before another rate can be fixed to take its place— and fixing another, upon evidence introduced, upon a complaint filed—in fact, a trial had with the aid of judicial process—may properly be said to be the exercise of a *quasi*-judicial duty. In any event, the power exercised in this

MAY TERM, 1906. 453

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

particular is more of a judicial than of an administrative character.

But whether the power exercised by the commission in fixing a rate is in its nature legislative, administrative or judicial is not decisive of the question presented.

8. It is conceded by counsel for appellee, in answer to appellant's argument, that without section six the rate fixed by the commission is conclusive and that, aside from any provision in this act, the courts are open to the carrier to prevent the enforcement of the order of the commission, if the rate established is unlawful. As the statute requires the rate to be just, reasonable and undiscriminative, if the commission fixes a rate that is not reasonable, its act is unlawful. A decision declaring the rate fixed to be unlawful, and whether unlawful because unreasonable, or unlawful because the statute was not followed in fixing it, is a judicial act, and is a question for the courts. It is not material by what delegated authority the rate is fixed, nor by what name the duty of fixing the rate is characterized, if the rate is unreasonable or unlawful the court will give protection against it. *Reagan* v. *Farmers Loan, etc., Co.* (1893), 154 U. S. 362, 367, 14 Sup. Ct. 1047, 38 L. Ed. 1014, 4 Interst. Com. Rep. 560; *Chicago, etc., R. Co.* v. *Minnesota, supra; St. Louis, etc., R. Co.* v. *Gill* (1895), 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; *Smyth* v. *Ames* (1898), 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. 418; *Burlington, etc., R. Co.* v. *Dey* (1891), 82 Iowa 312, 48 N. W. 98, 31 Am. St. 477, 12 L. R. A. 436; *Chicago, etc., R. Co.* v. *Jones* (1894), 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. 278; *Atlantic Express Co.* v. *Wilmington, etc., R. Co.* (1892), 111 N. C. 463, 16 S. E. 393, 32 Am. St. 805, 18 L. R. A. 393.

In *Reagan* v. *Farmers Loan, etc., Co., supra,* the court said: "It has always been recognized that, if a carrier attempted to charge a shipper an unreasonable sum, the

courts had jurisdiction to inquire into that matter and to award to the shipper any amount exacted from him in excess of a reasonable rate; and also in a reverse case to render judgment in favor of the carrier for the amount found to be a reasonable charge. The province of the courts is not changed, nor the limit of judicial inquiry altered, because the legislature instead of the carrier prescribes the rates. The courts are not authorized to revise or change the body of rates imposed by a legislature or a commission; they do not determine whether one rate is preferable to another, or what under all circumstances would be fair and reasonable as between the carriers and the shippers; they do not engage in any mere administrative work; but still there can be no doubt of their power and duty to inquire whether a body of rates prescribed by a legislature or a commission is unjust and unreasonable, and such as to work a practical destruction to rights of property, and if found so to be, to restrain its operation. * * * These cases all support the proposition that while it is not the province of the courts to enter upon the merely administrative duty of framing a tariff of rates for carriage, it is within the scope of judicial power and a part of judicial duty to restrain anything which, in the form of a regulation of rates, operates to deny to the owners of property invested in the business of transportation that equal protection which is the constitutional right of all owners of other property. There is nothing new or strange in this. It has always been a part of the judicial function to determine whether the act of one party (whether that party be a single·individual, an organized body, or the public as a whole), operates to divest the other party of any rights of person or property. In every constitution is the guarantee against the taking of private property for public purposes without just compensation."

So that, when the unreasonableness or unlawfulness of the rate is thus brought before a trial court, it is tried and

determined by the court as other questions of law and fact. And if, after a hearing, the court concludes that the rate is unreasonable, or that it has not been fixed according to law, or that it has not been fixed under a law authorizing its establishment, it may in effect set the act of the commission aside by restraining its enforcement. The determination of these questions is clearly the exercise of judicial authority. The question then presents itself: May the legislature require that a court shall determine these same questions, not by a trial, but by a review of all the proceedings and evidence taken by the commission? Whether it is, strictly speaking, an appeal within the generally accepted meaning of the term, is not conclusive, but the question is, may the legislature require that the question be determined in that way?

It is well settled that, under a general statutory provision providing for an appeal from all decisions of the board of county commissioners, an appeal may be taken from any order of the board, if the duty of the board involves judicial action, unless the right of appeal is expressly or impliedly denied by the statute creating the duty. And it is also settled that an appeal will not lie under this general provision if the duty of the board does not involve judicial action, but consists in the performance of administrative, ministerial or discretionary powers. However, an appeal will lie from the action of the board where the only power exercised by the board is administrative, ministerial or discretionary, if an appeal is expressly authorized by statute. See *Bosley* v. *Ackelmire* (1872), 39 Ind. 536; *Moffitt* v. *State, ex rel.* (1872), 40 Ind. 217; *Baltimore, etc., R. Co.* v. *Board, etc.* (1880), 73 Ind. 213; *Grusenmeyer* v. *City of Logansport* (1881), 76 Ind. 549; *Padgett* v. *State* (1884), 93 Ind. 396; *City of Terre Haute* v. *Mack* (1894), 139 Ind. 99; *Board, etc.,* v. *Davis* (1894), 136 Ind. 503, 22 L. R. A. 515; *Mode* v. *Beasley* (1896), 143 Ind. 306.

Thus appeals are authorized in highway cases, in drainage proceedings, street assessments, the action of purely administrative boards, and in other matters where the action of the tribunal from which the appeal is authorized is in no sense judicial.    It is quite true that these cases go to a trial court upon such appeal and are tried as original actions.    But these cases go to this point:   That whether an appeal will lie from the action of an inferior tribunal or statutory board may or may not depend upon the capacity in which the tribunal or board acts in doing the thing required of it, but it may depend entirely upon whether the legislature has said that there may be an appeal.

The legislature established the Appellate Court under the authority given by §1, article 7, of the Constitution, which provides that "the judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish."   It is manifest that the act in force February 28, 1891 (Acts 1891, p. 39), establishing the Appellate Court, invested the court with appellate jurisdiction only.   By the first section of that act it was given jurisdiction of appeals from the circuit, superior and criminal courts in certain designated classes of cases.   The clerk and sheriff of the Supreme Court are made the clerk and sheriff of the Appellate Court, and the judges of the Appellate Court were required to adopt the same uniform rules of practice as govern the Supreme Court.   Appeals were required to be taken to the Appellate Court in the same manner as to the Supreme Court, and pleadings, practice and proceedings in the two courts were to be the same.   The act did not create any new appellate jurisdiction, but simply took a part of the general appellate jurisdiction then existing and transferred it to the Appellate Court which the act created.   The act did not undertake to confer upon the court any original jurisdiction and conferred none; and under that act the court had no original

MAY TERM, 1906. 457

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

jurisdiction, except such as the court should necessarily exercise in aid of its appellate jurisdiction—an inherent power of all appellate tribunals. Prior to 1905 various amendments touching the court's jurisdiction were made to the original act, and by the act in force March 12, 1901 (Acts 1901, p. 565, §9, §1337i Burns 1901), all appellate jurisdiction was vested in the Appellate Court except in nine classes of cases, jurisdiction of which remained in the Supreme Court. But in none of these amendatory acts was any attempt made to confer any original jurisdiction, and none was conferred.

However, as this court is established by the legislature, the legislature has, within the constitutional limitations as to the judiciary, full power to define its procedure and jurisdiction. "It is true," said the court in *Hovey* v. *State, ex rel.* (1891), 127 Ind. 588, 11 L. R. A. 763, 22 Am. St. 663, "that the legislative department may increase, or diminish, the jurisdiction of the [Supreme] Court, and may, within the terms of the Constitution, prescribe rules of practice." It is equally true that the legislature may confer upon a court of its own creation either appellate or original jurisdiction, or both. Brown, Jurisdiction (2d ed.), §13. There is nothing in the Constitution that restricts its jurisdiction. The fact that it is called an "appellate court" and was created as a court of appeals, and that, strictly speaking, an appellate court can review a decision of a court only, does not preclude the legislature from conferring upon it jurisdiction other than strictly appellate jurisdiction. The question is whether the particular duty placed upon the court is a judicial duty.

The sixth section of the act in question expressly provides that the secretary of the commission shall, upon request, furnish a complete transcript of all the proceedings of the commission relative to the action appealed from, also a copy of all the evidence which

458    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

shall be incorporated into such transcript. This transcript is filed in the office of the clerk of this court, who dockets the same for hearing and determination. Jurisdiction is conferred to hear and determine the appeal, which is given precedence over other civil causes, and the cause "shall be heard and determined upon the transcript filed as aforesaid." It is clear that the legislature did not intend that there should be a trial in this court, in the ordinary meaning of that term.

It is true that section three says that this court upon the appeal may "affirm, change, modify or set aside" the action of the commission. Whether the court would, upon final judgment, have power to change or modify a rate fixed by the commission is not now presented. But it is manifest that the court might, as a court, determine whether the rate was legally established or whether it was established under a law authorizing it, and affirm or set aside the action of the commission in fixing the rate; and neither more nor less than this is done when the question of the unreasonableness of the rate is heard by a trial court. If the action of the commission should be affirmed, the rate is fixed, not by the court, but by the commission. The power to change or modify a rate is not at all essential to the power to affirm or set aside the order of the commission. It is quite true that it is an elementary principle that "upon judges as such no functions can be imposed except those of a judicial nature." Cooley, Prin. of Const. Law, 53. And see *Ex parte Griffiths* (1888), 118 Ind. 83, 3 L. R. A. 398, 10 Am. St. 107; *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 37 L. R. A. 189. But determining whether a rate has been legally established or whether the same is or is not reasonable, is a judicial function.

If, then, the duty to be performed is judicial, may the legislature prescribe the procedure? It cannot be said that

MAY TERM, 1906. 459

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

necessarily the only question that would be presented by this transcript would be the weight of the evidence. The power possessed by the commission is only such as the statute gives it. The method by which it is to proceed is pointed out. If this method is not pursued, its action is a nullity. The whole proceeding is a special, statutory one, and certain steps must be taken before the commission has any authority to proceed. Until the contrary appeared, the same presumption would prevail in favor of the action of the commission that prevails in a review of a judgment in a civil action. It is quite true, as argued, that it is not to be presumed that the commission would fix an unreasonable rate. But may it not also be said that it is not to be presumed that a court will render a wrong judgment? Does not the same reason for a review exist in both cases?

It is also argued that this provision in this act delegates to the commission—a nonjudicial body—the duty of hearing the evidence upon which a court is to render a decision. Even if it could be said that the only question that would necessarily be presented by the transcript would be on the weight of the evidence, and as stated, this would not necessarily be the only question, this objection to the manner of hearing the evidence would not be tenable. A case may be tried in the circuit court upon evidence consisting wholly of depositions taken by a notary public. A circuit court may refer a case to a master commissioner, to whom judicial power cannot be given (*Shoultz* v. *McPheeters* [1881], 79 Ind. 373), and make a finding from the evidence so taken, or pronounce a judgment upon a finding of facts made by the master from the evidence heard by him.

Our conclusion upon this branch of the case is that the legislature, in providing for an appeal to this court, has required of this court the performance of a judicial duty that may rightfully be imposed; that the legislature may

vest the court with such jurisdiction as it sees fit, provided the duty required is a judicial duty; that in determining upon an appeal, whether the rate fixed by the commission has been established in due form of law, under a valid law and by a valid commission, and whether the rate fixed is a reasonable rate, the court is required to exercise judicial authority only. If the legality, or the reasonableness of a rate fixed by the commission may be questioned in a court, and it is so conceded and has been so decided, we think the legislature may designate the court in which, and the procedure by which, that review may be had. For the reasons given, the motion of appellee commission to dismiss the appeal is overruled.

Counsel, in support of appellant's motion, have discussed at length the constitutionality of the act, claiming that it is unconstitutional, among other reasons, on the ground that it empowers the commission to fix a rate before the reasonableness of such rate has been judicially determined, and on the ground that interurban roads are exempt from the provisions of the act. Appellant's motion is not to dismiss the appeal, but to dismiss the petition. The petition or complaint is not filed in this court, but comes to this court in the transcript of the proceedings of the commission. It is a part of the transcript filed in this court. If the act is invalid, as appellant insists, it is true that the commission has no authority to act, and from that it would necessarily follow that this court could have no jurisdiction of the appeal. Whether any motion in this court to dismiss a petition filed with the commission would be a proper motion to be considered by this court at any time we need not now determine. But, as to the motion now presented by appellant, the effect of a ruling in its favor upon the questions argued in support of its motion would be a determination of the appeal upon its merits. It is true, if the act is invalid, any act of the commission

MAY TERM, 1906. 461

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

under its provisions would be without authority of law, and, in the consideration of the appeal on its merits, the constitutionality of the act would be the first question to be determined, but that question can not be raised by a motion to dismiss the petition.

The motion to dismiss the appeal is overruled.

Comstock, P. J., Roby, Wiley and Myers, JJ., concur.

Wiley, J.—I concur in the conclusion that an appeal will lie to this court from the action of the railroad commission, and think the motion to dismiss the appeal is correctly overruled. I entertain the further opinion that appellant's motion to dismiss the petition presents the constitutionality of the act creating the commission, and that it is a matter of such importance it ought now to be decided.

## DISSENTING OPINION.

Black, J.—The railroad commission is an administrative board, and not a court. Whatever may be said properly as to the theoretical nature of the elementary functions or powers of government involved in the making of an order by that board to correct, alter, change or establish a rate, charge, classification, rule or regulation upon complaint setting forth the unreasonable character of a rate, charge, classification, rule or regulation of a railroad company or an express company, the commission in the performance of such duty does not act in a judicial capacity, though the prescribed modes of procedure resemble in some respects those of a court, and though in the performance of the duty the commission must consider the question as to the reasonableness of the rate, charge, classification, rule or regulation concerning which complaint is made, and must decide what is, in the particular instance, reasonable. The question as to what is a reasonable rate, etc., is in its nature a question of fact, and merely because an administrative board in the discharge of its duties must consider and decide such a question it does not thereby be-

462    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

come a court, and as to the determination of such question it is not acting in a judicial capacity. The result of the proceedings of the commission under the statute is an official administrative arrangement, and not a judicial decision. If when the decision upon a question of reasonableness is made by a court it is to be treated as a judicial question, it does not necessarily follow that it is to be so treated when it occurs in an administrative matter in the manner in which it constantly enters into the making of expedient regulations by administrative officers in general. As said by Cooley, J., in *Weimer* v. *Bunbury* (1874), 30 Mich. 201: "Much of the process by means of which the government is carried on and the order of society maintained is purely executive or administrative." An officer or a board is not judicial in the true sense of the term merely because he or it performs duties which when performed by a court are regarded as judicial duties. "If it were otherwise it would be almost impossible to conceive of an office not judicial, inasmuch as all officers, whatever their class or rank, are required to exercise functions and perform duties which in their nature are judicial." 1 Elliott, Gen. Prac., §205, and authorities cited.

If a court render a judgment in a cause wherein it has jurisdiction, the legislature cannot set it aside and grant a new trial, or substitute its own decision for that of the court. Yet it cannot be doubted that though the railroad commission, pursuant to the statute, should fix a rate for a particular railroad, and there should be no appeal from the action of the commission, the legislature might by its subsequent enactment make a different rate for railroads which would supersede the future operation of the regulation made by the commission.

Whatever may be the correct conclusion upon the question as to the authority of the legislature to confer upon the Appellate Court original jurisdiction in a particular class of cases, or to require it to try and determine *de novo*

MAY TERM, 1906. 463

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

after the railroad commission such a matter as that here presented, the General Assembly intended in this instance to confer upon that court jurisdiction to examine, not the rate—it is made by the railroad company—but the action of the commission by consulting a transcript of its proceedings, and to affirm the action of the commission or to change or modify it or set it aside, as justice may require, the authority so conferred being spoken of in the statute as jurisdiction to hear and determine an appeal. It was, not the intention to confer or impose original jurisdiction upon this court as a judicial body. The legislature, it may perhaps be supposed, intended that we should perform our assigned part acting in the capacity of a court of appeals. If we are to proceed only in the capacity of a court of appeals, without original jurisdiction, we must review only judicial determinations of a subordinate court, upon a record importing the absolute verity of the record of a judgment. Appellate judicial authority implies original judicial action over which such authority may be judicially exercised.

The word "appeal," when properly used as a term of the law, means the removal of a case from one court to another court. "The matter of appeals is essentially and throughout judicial, and there can, in legal contemplation, be no appeal when there is no decision by a judicial tribunal. Two things are essential, the decision of a judicial tribunal of original jurisdiction, and a superior court invested with authority to review the decision of the inferior tribunal." Elliott, App. Proc., §15. In the next section of the same book it is said: "Appellate jurisdiction is the authority of a superior tribunal to review, reverse, correct, or affirm the decisions of an inferior judicial tribunal in cases where such decisions are brought before the superior court pursuant to law. * * * Judicial power resides in courts, and hence it is essential that the original, as well as the appellate decision, should be made by a court." Elliott, App. Proc., §16.

464 APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

"In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised." 2 Story, Constitution (5th ed.), §1761.

"Appellate jurisdiction, *ex vi termini*, implies a resort from an inferior tribunal of justice, to a superior, for the purpose of revising the judgments of the inferior tribunal." *Smith* v. *Carr* (1808), Hardin (Ky.) 305.

To constitute appellate jurisdiction, properly so called, as distinguished from original jurisdiction, the decision to be reviewed must be a decision made by a court properly so designated, and not simply a decision of a body with *quasi*-judicial authority. Elliott, App. Proc., §17.

"The jurisdiction of an appellate tribunal is not exercised over ministerial or administrative officers directly, for when it exercises such authority it proceeds as a court of original jurisdiction." Elliott, App. Proc., §20.

"The power of the appellate court necessarily includes the power not only to reverse the judgment, but also, to control and direct the subsequent action of the subordinate court." *Piqua, etc., Bank* v. *Knoup* (1856), 6 Ohio St. 342, 349. And see *Dodds* v. *Duncan* (1884), 80 Tenn. 731.

The power resides in every appellate tribunal to coerce obedience to its orders, writs and mandates. Elliott, App. Proc., §22.

"Jurisdiction is original when it is conferred on the court in the first instance." 21 Am. and Eng. Ency. Law (2d ed.), 1009, note.

When a cause decided in one tribunal is removed to another and there tried *de novo,* the latter court is not concerned with errors committed by the former, but exercises authority in the nature of original jurisdiction, notwithstanding the method of bringing the cause before it.

Under our system of jurisprudence, where questions are submitted to the decision of an administrative body, and an appeal from such body is authorized by the legislature, the jurisdiction so conferred on the court to which the appeal is thus authorized has been treated as in the nature of original jurisdiction, and not as being appellate jurisdiction, strictly so called, and the investigation of the court takes the form of an original investigation, and not that of an appellate review of the record of a judgment.

When the legislature has authority to create a court, and, without any constitutional restriction, to prescribe its jurisdiction, it may judge for itself, however wisely or unwisely, upon the question as to the propriety of conferring original jurisdiction in one class of cases and appellate jurisdiction in other cases, and it may prescribe the manner of instituting the causes and the methods of procedure therein. To constitute original jurisdiction, the court must take cognizance of the case as an original cause.

The order of the railroad commission from which the appeal is authorized by the terms of the statute is not vacated by the appeal, but it remains operative and in full force until changed, modified or set aside by a circuit, superior or appellate court, though its operation may be suspended by the filing of a bond as provided in section six and one-half (Acts 1905, p. 83, §5405g Burns 1905), without involving the exercise of any power of the court except in the fixing of the amount of the bond and in the approval of the surety.

An appeal, in the strict sense of the term, cannot be granted by the legislature directly from a purely administrative body to a court which is limited by the Constitution to appellate jurisdiction. Therefore, appellate jurisdiction, properly so called, cannot be conferred on any court by the authorizing of an appeal directly from such a body.

In *Hubbell* v. *McCourt* (1878), 44 Wis. 584, it was held that the appellate power of the supreme court of Wis-

466    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

consin, conferred by the constitution, could not be extended to acts or decisions of officers or persons not acting as a court, and that the legislature could not compel the court to take jurisdiction of and determine appeals taken directly from orders made by judges in chambers.

In *Auditor of State* v. *Atchison, etc., R. Co.* (1870), 6 Kan. 500, 7 Am. Rep. 575, the appeal was taken pursuant to a statute by the auditor of state from the appraisal of the property of a certain railroad company made by the board of county clerks. On motion of the railroad company the appeal was dismissed. The legislature was under the constitutional restriction that the jurisdiction conferred on the court must be appellate, not original. It was said: "It would be absurd to claim, that it is in the power of the legislature to clothe this court with authority to review acts purely executive in their character, by giving an appeal therefrom to this court. Many of the duties which the executive is called upon to perform require great care and judgment in deciding how to act. Yet when the decision is made an appeal could not be given to this court, for that would give to the court executive powers as well as judicial."

In *Hestres* v. *Brennan* (1875), 50 Cal. 211, it was held that the secretary of the interior, who had authority to approve, modify or annul the acts, proceedings and decisions of the commissioner of the general land office, exercised, in revising the acts of the commissioner, "supervisory, rather than appellate power, in the sense in which the term appellate is employed in defining the powers of the courts of justice."

The judicial power, which every court possesses, is not created or given by the legislature. When, in the exercise of its constitutional authority, the legislature creates the court, though it may be abolished by the same authority, yet while it continues to exist it is invested with judicial power by the constitution which authorized its creation.

By virtue of the same organic law, the legislature has no authority to confer or to impose upon a court any other than judicial functions or duties.    The independence of the judiciary cannot be thus destroyed or impaired.

The railroad commission is put in motion by the filing of a complaint by some person or corporation injuriously affected, setting forth the unreasonable character of the rate, charge, classification, rule or regulation complained of, and after a hearing the commission is required to make such corrections, alterations, changes or new regulations, or any part thereof, as may be necessary to prevent injustice and discrimination to the party complaining, the order of the commission operating for the benefit of all persons or corporations situated similarly and on the line of the railroad.    The complaint of the injuriously affected person or corporation filed with the commission operates merely as a necessary suggestion, and cannot be regarded as a pleading whereby a judicial proceeding is instituted.    The person or corporation thus putting the commission in motion need not be a party to the so-called appeal to this court.    For the institution of the contemplated proceeding in this court, any railroad company or other corporation or party in interest, dissatisfied with any rate, classification, rule, charge or general regulation, made, approved, adopted or ordered by the commission, is to procure a transcript of the proceedings of the commission, and, if he or it so desires, a copy of the evidence, and the dissatisfied company or party is to file such transcript in the office of the clerk of this court, and with it the dissatisfied company or party is to file a concise written statement of its or his causes of complaint against the action of the commission, making the railroad company a defendant thereto.    The cause in this court is to be "heard and determined" upon the transcript so filed.    Upon such hearing this court is to make a decision which shall be a final decision of the matter heard, and is given power to affirm the action of the commission,

468    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

or to change, modify or set aside the same, as justice may require. That is to say, the court's functions are the same as those of the commission, except that the latter, moved by the complaint of one injuriously affected, acts upon the rate, charge, classification, rule or regulation made by the railroad company, while the court, upon the complaint of some dissatisfied person or company, is to act on the rate, classification, rule, charge or general regulation made by the commission, and the commission hears and determines upon information originally furnished to it, while the court is confined to the information furnished by the transcript. The same criterion, that of the justice of the rate, etc., is to govern the determination of the commission and that of the court.

It does not appear to be contemplated that the court shall make any mandate to the commission, or that it shall remand the matter to the commission for further proceedings or for any purpose, and it is not required that its action shall be certified to the commission. The decision of the court is final, and the commission is directed to keep copies of all such findings and judgments on file in its office.

If we, on the hearing upon the information furnished by the transcript, should be unwilling to affirm the action of the commission, that is, to approve the rate, etc., ordered by it, we are not directed to reverse a decision of the commission, but the statute provides that we may affirm, change, modify or set aside, as justice may require. In view of the provision that our decision shall be final, it is intended that it shall furnish the regulation which is to control the railroad company, and it cannot be supposed that we are to stop with merely setting aside the action of the commission which we do not affirm. It is contemplated, and, if we are to make a final adjustment as required, it is necessary, that when we cannot approve the commission's rate, etc., we shall not merely set aside the

commission's action, but we shall state such a rate, etc., as justice may require, by changing or modifying the rate, etc., designated by the commission. It cannot be supposed that we would be given power to approve or set aside the rate, and also to make a finality, as justice may require, of the matter concerning which complaint is made to us, without exercising the power expressly given to change or modify the rate, etc., under consideration. Indeed, it is impossible for us to exercise official power and thereby take the final action required by justice without having and exercising the power to change or modify the rate, etc., made by the commission. In short, we cannot take any action as contemplated by the statute without acting administratively.

It would seem that the actual purpose of the statute is an attempted investment of a court of appeals with administrative functions which would in effect make it an additional railroad commission with modified procedure and without proper facilities. It is certain that we cannot perform what by the statute is contemplated, and that without which we would not have been given any of the authority which it attempts to confer, unless we are to exercise power not pertaining to a court.

For the foregoing reasons I am of the opinion that the appeal should be dismissed. Having arrived at the conclusion that this court has no jurisdiction in the premises, I cannot regard it as proper to go further into the question as to the authority of the railroad commission.

## ADDITIONAL DISSENTING OPINION.

[Filed December 27, 1906.]

BLACK, J.—When this case was before the court upon the motion of the appellee to dismiss the appeal, and the motion of the appellant to dismiss the complaint filed with the railroad commission, there was scarcely sufficient time for the proper examination of the important subject, the

matter being somewhat hastily decided because it was deemed proper to dispose of those motions before our summer vacation.

After an opportunity to examine the opinion of the majority filed on the former hearing and the authorities cited therein, it seems proper to add something to what was said on that hearing concerning the character of the commission's authority and this court's jurisdiction.

It is said in that opinion of the majority: "While the statute does not make the commission a court, and it is not a court, yet the act of setting aside the rate complained of —and this must be done before another rate can be fixed to take its place—and fixing another, upon evidence introduced, upon a complaint filed—in fact, a trial had with the aid of judicial process—may properly be said to be the exercise of a *quasi*-judicial duty. In any event, the power exercised in this particular is more of a judicial than of an administrative character."

The rate fixed by the carrier is set aside by the commission only in and by changing it. The decisions of the Supreme Court of the United States, cited later in that opinion, clearly are to the effect that the prescribing of changes of rates fixed by the carrier is a function to be exercised by the legislature by its own action or through its instrumentalities, and not by the courts. The provisions of our statute concerning the methods of the commission in gaining the information upon which it is to act are not all mentioned in the opinion of the majority in this connection. By section eleven the commission is given power to elicit all information deemed by it necessary to the hearing and consideration of any complaint made to it. It may submit blanks or interrogatories for eliciting information necessary to the consideration and determination of any and all questions over which it has jurisdiction. It "may use such other means or methods of securing such information as may be deemed expedient by it."

MAY TERM, 1906.        471

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

However nearly the commission may imitate, or be expressly authorized to imitate, the proceedings in courts of justice, its action in changing rates cannot be regarded or treated as the action of a court or as the exercise of the judicial power. The question as to the reasonableness of a rate, whether fixed by the railroad company or by the railroad commission, may become a judicial question in a suit in equity, or sometimes in an action at law, but the court in such suit or action cannot assume to itself, or be given by statute, the authority to prescribe a rate in place of the one thus brought in question. It was said in the quotation in the principal opinion on the former hearing herein from *Reagan* v. *Farmers Loan, etc., Co.* (1893), 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014: "The province of the courts is not changed, nor the limits of judicial authority altered, because the legislature instead of the carrier prescribes the rates. The courts are not authorized to revise or change the body of rates imposed by a legislature or a commission; they do not determine whether one rate is preferable to another, or what under all the circumstances would be fair and reasonable as between carriers and the shippers; they do not engage in any mere administrative work. * * * These cases all support the proposition that while it is not the province of the courts to enter upon the merely administrative duty of framing a tariff of rates for carriage, it is within the scope of judicial power and a part of judicial duty to restrain anything which, in the form of a regulation of rates, operates to deny to the owners of property invested in the business of transportation that equal protection which is the constitutional right of all owners of other property."

That case was a suit instituted in the circuit court of the United States to restrain the enforcement of rates fixed by the railroad commission of Texas. The defendant denied the power of the court to entertain an inquiry into the matter, insisting that the fixing of rates for carriage by a

public carrier is a matter wholly within the power of the legislative department of the government and beyond examination by the government; and it was in response to this proposition that the remarks of the court were made which are quoted in the opinion of the majority in the case at bar.

In *Chicago, etc., R. Co.* v. *Minnesota* (1890), 134 U. S. 418, 33 L. Ed. 970, 10 Sup. Ct. 462, which was a writ of error to review a judgment awarding a writ of mandamus, it is said in the concurring opinion of Mr. Justice Miller: "The proper, if not the only, mode of judicial relief against the tariff of rates established by the legislature or by its commission, is by a bill in chancery asserting its unreasonable character and its conflict with the Constitution of the United States, and asking a decree of court forbidding the corporation from exacting such fare as excessive, or establishing its right to collect the rates as being within the limits of a just compensation for the service rendered." It was further said that in the proceeding by mandamus against the railroad company, "which is equivalent to establishing by judicial proceeding the reasonableness of the charges fixed by the commission, I think the court has the same right and duty to inquire into the reasonableness of the tariff of rates established by the commission before granting such relief, that it would have if called upon so to do by a bill in chancery." Mr. Justice Bradley (Mr. Justice Gray and Mr. Justice Lamar concurring) was of the opinion that when the legislature or its railroad commission had fixed a tariff of fares and freights, the matter could not become a judicial question. In his dissenting opinion he said on page 464: "Such a board would have at its command all the means of getting at the truth and ascertaining the reasonableness of fares and freights which a legislative committee has. It might, or might not, swear witnesses and examine parties. Its duties being of an administrative character, it would have

the widest scope for examination and inquiry. * * *· Such a body, though not a court, is a proper tribunal for the duties imposed upon it."

*St. Louis, etc., R. Co.* v. *Gill* (1895), 156 U. S. 649, 39 L. Ed. 567, 15 Sup. Ct. 484, was an action to recover judgment for penalties for charging and receiving fares in excess of the rate per mile fixed by statute.

*Railroad Commission Cases* (1886), 116 U. S. 307, 29 L. Ed. 636, 6 Sup. Ct. 334, were suits to enjoin the railroad commission of Mississippi from enforcing against certain railroad companies the provisions of the railroad commission statute of that state.

In *Smyth* v. *Ames* (1898), 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. 418, and other cases decided at the same time, the plaintiffs sought a decree enjoining the enforcement of certain rates of transportation, upon the ground that the statute prescribing them was repugnant to the Constitution of the United States.

*Burlington, etc., R. Co.* v. *Dey* (1891), 82 Iowa 312, 48 N. W. 98, 31 Am. St. 477, 12 L. R. A. 436, was a suit to enjoin a railroad commission from establishing joint rates for certain railroad companies.

*Chicago, etc., R. Co.* v. *Jones* (1894), 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. 278, was an action in debt to recover from a railroad company penalties for alleged overcharges of freight in excess of rates fixed by a railroad commission.

In *Atlantic Express Co.* v. *Wilmington, etc., R. Co.* (1892), 111 N. C. 463, 16 S. E. 393, 32 Am. St. 805, 18 L. R. A. 393, there was an appeal from the railroad commission to a county court and an appeal from that court to the supreme court. In the statute, the commission was expressly "created and constituted a court of record;" but it was held in *Caldwell* v. *Wilson* (1897), 121 N. C. 425, 28 S. E. 554, to be an administrative court, and not a judicial court. And in *Pate* v. *Wilmington, etc., R.*

*Co.* (1898), 122 N. C. 877, 29 S. E. 334, it was held that the commission was (somewhat like the board of county commissioners) an administrative court; that its orders and regulations were merely the basis of judicial action in the superior court to enforce them or to punish their violation; and, though the statute provided for an appeal directly from the commission to the Supreme Court, it was held that if the latter court entertained such appeal it would be assuming original jurisdiction of a matter as to which, though heard and determined by a board of competent jurisdiction, there had been no judicial adjudication of its validity nor proceedings to punish its violation, whereas the jurisdiction of the Supreme Court was appellate only except in claims against the state. Accordingly, the appeal was dismissed.

In *State, ex rel., v. Minneapolis, etc., R. Co.* (1900), 80 Minn. 191, 83 N. W. 60, which was an appeal in a proceeding for a writ of mandamus, the statute there referred to which provided for an appeal authorized the appeal to the district court, and provided that " 'upon such appeal, and upon the hearing of any application by the commission or by the attorney-general, for the enforcement of any such order made by the commission, the district court shall have jurisdiction to, and it shall, examine the whole matter in controversy, *including matters of fact* as well as questions of law, and to affirm, modify or reverse such order in whole or in part as justice may require,' " and that " 'the remedies herein provided for shall be in addition to all existing legal and equitable remedies.' " It was said by the court that no effect would be given to the language italicised, "if it was not intended that in a proceeding like this, to enforce an order made by the commission, there should be just such a trial as there would be if an appeal had been taken from the order. On such appeal, the court will examine matters of fact to ascertain whether there is any evidence reasonably tending to

support the disputed findings of fact, taking evidence *de novo.*" See, also, *Minneapolis, etc., R. Co.* v. *Minnesota* (1902), 186 U. S. 257, 46 L. Ed. 1151, 22 Sup. Ct. 900; *In re Railroad Commissioners* (1884), 15 Neb. 679, 50 N. W. 276; *Board, etc.,* v. *State, ex rel.* (1897), 147 Ind. 476, 495.

It is said in the opinion of the majority of this court in the case now before us: "The question then presents itself: May the legislature require that a court shall determine these same questions, not by a trial, but by a review of all proceedings and evidence taken by the commission?"

Reference is then made to a class of cases where an appeal is always tried *de novo,* the court to which the appeal is taken assuming to act only as a court of original jurisdiction in such cases. It is then argued that it is within the province of the legislature to confer original jurisdiction upon this court, or "jurisdiction other than strictly appellate jurisdiction," which, of course, can properly mean nothing but original jurisdiction. Yet it is said, further, that "it is clear that the legislature did not intend that there should be a 'trial' in this court in the ordinary meaning of the term"—a statement in which I concur. The court then indicates its belief that the function of this court under the statute is only to review the case upon the transcript as a court of appellate jurisdiction, for the correction of errors, the same presumption prevailing in favor of the action of the commission that prevails in a review of a judgment in a civil action. It is not clearly stated that this court is not to weigh the evidence, but it is stated that it cannot be said that the only question presented would be the weight of the evidence, and that, if the contrary could be said, the objection that the statute delegates to a nonjudicial body the duty of hearing the evidence upon which a court is to render a decision would not be tenable, the instances mentioned being of the taking of evidence under a court's own sanction for its use in rendering a judicial de-

476    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Railroad Com., etc.—38 Ind. App. 439.

cision, on appeal from which the evidence would not and could not be weighed by the appellate court (*Parkison* v. *Thompson* [1905], 164 Ind. 609; *Pence* v. *Garrison* [1884], 93 Ind. 345, 354), while in the present instance the evidence is taken by the nonjudicial body for its own use by way of providing itself in part with the information on which it acts.

The majority not only said that this court has been given exclusive "appellate jurisdiction," but the court refused to consider at that stage of the case the motion of the appellant to dismiss the complaint, saying that it was not filed in this court, but came to it in the transcript of the proceedings of the commission. If this court had been regarded as having the case before it as an original case, it, of course, could have taken up that motion when it thus refused to do so.

It is said that this court is designated as the tribunal to determine finally certain controversies arising "between the railroad commission and the persons or corporations with whom it has to deal;" and it appears that the majority treated the case as before this court for its action as a court of appellate jurisdiction only, though it foreshadowed a disposal of the appeal as if upon the theory that this court, instead of having the power to render judgment as directed by the terms of the statute, and as intended by the legislature, had the authority to dispose of the case much in the way in which such a matter might be determined upon an original judicial investigation of the question as to the reasonableness of the rate fixed by the commission.

In seeking to construe and apply the statute in question, the manifest intention of the legislature should be kept constantly in view, and it should be assumed that the legislature intended to employ the terms of the statute in the sense in which they are and have been understood and applied. From the beginning of the judicial history of this State it has been uniformly the usage of the legislature and

the practice of the courts to employ and apply the term "appeal," when used with reference to the removal of a proceeding from a court not of record, or from an inferior court of limited or merely statutory powers, or from an administrative body or officer, having *quasi*-judicial authority, to a court of record, in such a sense as to require that court to take original jurisdiction and to try the matter *de novo,* according to the methods and with the powers which obtain in courts of justice; but when the legislature provided for the hearing and determination of the appeal here in question upon the transcript of the record of the commissioners, it cannot be doubted that the law-making body did so having in view the method of taking appeals from the circuit courts to the Supreme Court and the Appellate Court, and intended that this record should be treated by the Appellate Court as having the same qualities and effect as the record of a court of general, superior jurisdiction.

The statute, upon careful reading, indicates the intention of the legislature to confer in such a case as that before us appellate jurisdiction, and not original jurisdiction. This court is to hear and determine the appeal upon the transcript of the proceedings of the commissioners. In the same section which makes these provisions for appeal, provision is made also for a proceeding of another kind, whereby, in case of dissatisfaction with certain orders of the commission, the dissatisfied company or party may file a petition in the circuit or superior court, making the commission a defendant, the cause to be heard and determined as a suit in equity, without a jury. It was clearly the intention to recognize this court as a court of appeals, and to confer upon it appellate jurisdiction, and not original jurisdiction, in cases to be removed to it from the commission.

The legislature cannot invest this court with judicial duty as a court of appeal for the correction of errors, except in cases which have been decided by judicial courts, prop-

478    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Railroad Com., etc.—38 Ind. App. 439.

erly so called.   In that capacity we can review only judicial decisions, not questions, whatever their nature, which have been before only bodies which are not courts.

It need not be said in this case that this court might not be· given original jurisdiction to determine judicially the question as to the reasonableness of a rate fixed by the railroad commission.   It has not been given such jurisdiction.

Without authority to take evidence *de novo,* and to proceed as in an original case, there cannot be an examination according to judicial methods; and, if the decision of this court on such an appeal as this is to have the conclusive effect of a judgment, the parties in interest will be deprived of a judicial investigation according ' to the principles and rules of law and equity.

If there had been a mere allowance of an appeal, the question would have arisen whether this court might not take thereunder original jurisdiction and have a trial *de novo.*   But the legislature did not leave opportunity so to apply the word "appeal" used by it; on the contrary, it designated the procedure in this court.   See *Hays* v. *Merchants Bank* (1895), 10 Wash. 573, 39 Pac. 98.

We cannot treat the action of the commission as merely *prima facie* correct.   No method is provided for meeting in this court a *prima facie* case.   If the information on which the commission proceeds, so far as it is shown by the transcript, merely tends to support the commission's decision, its determination, by the requirements of the statute, would be conclusive here.   Can one who has passed through such a nondescript proceeding be said to have had his day in court?

This opinion, to supplement my former dissenting opinion, is filed at this time because my service on the bench of this court will terminate at the end of this month and before the final hearing of the pending cause.