## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY v. RAILROAD COMMISSION OF INDIANA.

[No. 21,641.   Filed May 23, 1911.]

1. RAILROADS.—*Facilities for Handling Cars.—Orders of Railroad Commission.—Complaint.*—A complaint by a railroad company to enjoin the railroad commission from enforcing an order respecting interchange of cars with a competing company, alleging that the plaintiff "has only provided sufficient facilities to accommodate its own business, and it does not have facilities sufficient to handle the business of the" competing company, in the absence of a motion to make more specific, sufficiently shows that the plaintiff does not have sufficient facilities to handle all the business of both roads.  p. 636.

2. INJUNCTION.—*Adequate Legal Remedy.—Railroads.—Switching Cars from Other Roads.—Powers of Commission.*—Under §5206 Burns 1908, Acts 1907 p. 434, §4, providing, among other things, that the railroad commission may relieve a railroad company from switching cars at a terminal point from another road to its own road to be loaded upon its own switch, if it has only sufficient switching facilities to accommodate its own business, a railroad company cannot secure injunctive relief against an order of the railroad commission making a rate for such switching and requiring it to be done, before applying to such commission for relief therefrom by showing its inability to do such switching because of inadequate trackage.  p. 637.

3. RAILROADS.—*Switching at Terminals.—Orders of Railroad Commission.—Injunction.—Special Findings.*—In a suit by a railroad company to enjoin the railroad commission from enforcing an order fixing a rate for switching cars from a competing company to its own tracks to be loaded, a failure of the court to find that the plaintiff had inadequate track facilities therefor is not prejudicial to the plaintiff, where the evidence on such question was conflicting.  p. 638.

4. RAILROADS.—*Railroad Commission.—Orders.—Rehearings.—Injunction.*—Injunction does not lie in the first instance against the enforcement of an order of the railroad commission, since under §5537 Burns 1908, subd. (c), Acts 1907 p. 454, §7, such commission may, on a petition for a rehearing, "alter, change or modify any final order made by it," the plaintiff being required to exhaust the legal remedy before applying for an injunction.  p. 638.

MAY TERM, 1911. 631

Chicago, etc., R. Co. *v.* Railroad Com., etc.—175 Ind. 630.

5. · RAILROADS.—*Railroad Commission.—Orders.—Time of Taking Effect.*—Under §5537 Burns 1908, Acts 1907 p. 454, §7, providing that the orders of the railroad commission shall take effect not more than thirty days after entry thereof "unless * * * suspended, or set aside, or modified by the commission," such commission has the power to suspend the taking effect of an order until a petition for a rehearing is acted upon. p. 638.

6. RAILROADS. — *Railroad Commission.—Powers.—Moving Empty Cars from one Road to Another for Loading.*—Under §5533 Burns 1908, Acts 1907 p. 454, §3, providing, among other things, that all carriers shall transfer and deliver all freight cars, loaded or empty, tendered by a connecting line, destined to any point on their lines, and that such commission shall have power to supervise the charges therefor, such commission is impliedly authorized to require one company to switch empty cars from another company onto the former company's public switches for purposes of loading. p. 639.

7. COMMERCE. — *Interstate. — Railroad Commissions. — Powers. —* State railroad commissions have no power to regulate freight rates on interstate commerce. p. 641.

8. RAILROADS. — *Railroad Commission.—Orders.—Construction.— Interstate Commerce.*—An order of the railroad commission fixing the rates to be charged by railroads for switching cars from the tracks of one company to those of the other, and not restricting such rates to intrastate traffic, will be construed not to apply to interstate commerce, where the petition upon which the order was based called for the fixing of rates for intrastate shipments only. p. 641.

9. RAILROADS. — *Railroad Commission.—Powers.—Administrative Power Exercised by Courts.—Constitutional Law.*—Section 5540 Burns 1908, Acts 1907 p. 454, §10, giving to the railroad commission supervisory power over the fixing of freight rates, and §5536 Burns 1908, Acts 1907 p. 454, §6, giving any aggrieved party a right to bring an action to determine the validity of such rate so fixed by the commission, do not conflict with article 3 of the Constitution providing for a separation of the powers of government into three departments and forbidding officers in one of such departments from exercising powers belonging to another department, since the court has no power to fix rates, but it may declare them void. p. 642.

10. CONSTITUTIONAL LAW. — *Confiscation.—Railroads.—Switching Cars at Terminals.*—An order of the railroad commission requiring railroad companies at their terminals to switch cars from one company's tracks to those of the other and fixing the rates therefor, does not violate the 14th amendment to the federal Constitution on the ground that the enforcement of such order

would virtually give to one company the use of the other's tracks without compensation. p. 645.

From Superior Court of Marion County (78,679); *John L. McMaster*, Judge.

Suit by the Chicago, Indianapolis and Louisville Railway Company against the Railroad Commission of Indiana. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*H. R. Kurrie, W. L. Taylor* and *E. C. Field,* for appellant. *Hanly, McAdams & Artman,* for appellee.

MORRIS, J.—Certain shippers at Bloomington, Indiana, filed with the Railroad Commission of Indiana their petition against appellant and the Indianapolis Southern Railway Company, in which it was alleged that there is a physical connection between the lines of respondents in that city, and praying for an order requiring them to publish and file with the commission just and reasonable rates for switching carload traffic between their lines and all the industries of the city, and that they be required to apply said rates for two years to the movement of all traffic destined on either line at Bloomington from points in Indiana. On May 25, 1909, the petition was heard by the commission, and it entered a finding and order, in which it found respondents' switching tariffs unreasonable and discriminatory, as alleged in the petition, and ordered respondents to issue, publish and file with the commission switching tariffs for the city of Bloomington of $3 a car load for the movement of all commodities, which order was to be in effect for two years, commencing June 11, 1909. The order was to apply to the movement of all commodities in carloads from respondents' interchange track in the city to the several points of loading and unloading of the several industries located along the tracks and sidings of respondents, as indicated in their tariffs, and the order was also to apply for such time to the movement of such traffic from all such industries, etc., to such interchange track.

On June 14, 1909, appellant filed in the Superior Court of Marion County its complaint against the commission, in which it was alleged that said order was void, and praying that it be so declared, and that appellee be enjoined from taking any action to enforce it. While this complaint was pending, the commission issued an order, supplemental to the one issued on May 25, providing that neither of said respondents should be required, under the order, to furnish cars for outbound traffic loaded on its line, destined over the line of the other company, but in such cases the line that was to perform the transportation should furnish empty cars to the switching line at the junction point, to be by it taken to the point of loading and returned to the junction point; and providing also that the carriers shall not be required to perform such switching services in any case where such carrier can transport the freight to destination and point of delivery with reasonable dispatch, and at the same rate as the line offering the car, and at the time shall be prepared to perform the service. Appellant thereupon amended its complaint, setting out therein the modification of the original order.

To this complaint the commission filed an answer of general denial. There was a trial, special findings and conclusions of law thereon by the court and judgment for defendant, from which this appeal is prosecuted. The errors assigned are based on the action of the court in overruling appellant's motion for a new trial, and on each of its conclusions of law stated. Among the many facts found, the following are the most important: Appellant for many years before the bringing of the suit, owned and operated a line of steam railroad extending from Michigan City through Bloomington to New Albany, also one from Hammond to Indianapolis, one from Orleans to French Lick Springs, one from Bedford to Linton, and one from Wallace Junction to Linton, all in Indiana; that seventy-five per cent of appellant's traffic moves in interstate commerce; that appellant's

railway is crossed by many other railways in Indiana, and physical connections have been made at such crossings for the interchange of carload traffic; that physical connection was made between respondents in 1905, since which time carload traffic has been interchanged there; that on April 28, 1909, appellant published and filed a switching tariff rate applicable to Bloomington Junction; that at that time two industries were located on the line of the Indianapolis Southern railway; that since January 1, 1907, there has been a car service rule in effect at Bloomington, fixing a charge of $1 a day for detention of each car over forty-eight hours in loading or unloading; that there were joint rates on coal in effect before the order of the commission was made; that there are on appellant's line three coal mines which produce bituminous coal, and are served alone by appellant; that there are coal mines on the Indianapolis Southern railway; that there are also mines on the Vandalia railway in Indiana, which road, on a joint rate and in connection with the Indianapolis Southern Railway Company, carries coal from such mines to Bloomington; that at no time has there been in effect any switching rate, whereby coal in carloads, arriving at Bloomington on the Indianapolis Southern railway on its local rate, or on the joint rate with the Vandalia Railway Company, could be switched from the junction point to industries on appellant's line at Bloomington; that no carloads of coal or stone have been switched; that on appellant's line at Bloomington are located industries that use great quantities of coal in carload lots; that the coal produced on the line of the Vandalia railway is somewhat superior in quality to that produced on appellant's line, but in the market and commercially the two kinds are substantially the same; that there are fifteen siding and spur-tracks connecting with appellant's main line at Bloomington; that ten of these tracks are known as private tracks, though maintained by appellant, and are used

MAY TERM, 1911. 635

Chicago, etc., R. Co. *v.* Railroad Com., etc.—175 Ind. 630.

by appellant and industries located thereon, solely for the purpose of serving the various mills, yards and factories located thereon; that the remaining five tracks are variously designated in railroad parlance as "team tracks," "hauling tracks" and "public tracks," and are used in serving a few industries located thereon, those who have no place of business on the tracks, and the public generally; that the several mills, yards, factories and other industries—twenty-eight in number—located on appellant's sidings are wholly dependent on appellant to deliver to and take from them carload traffic coming in or departing over the Indianapolis Southern railway; that appellant and the Indianapolis Southern Railway Company are in active competition at Bloomington for traffic, and the rates fixed by them are substantially the same. The court found that the switching rates ordered by the commission were fair and reasonable. Under the assignment that the court erred in overruling appellant's motion for a new trial, appellant asserts that the lower court erred in failing to find that the facilities of appellant are insufficient to handle the business. The court made no finding on this matter.

The direct evidence on this subject was confined to two of appellant's witnesses—C. T. McHugh, trainmaster, and A. K. Helton, appellant's station agent at Bloomington. The former testified that "we have all we can do, with our present facilities, to take care of our own business. * * * The conditions are badly congested." Helton testified that appellant's facilities at Bloomington are not sufficient to handle the business of appellant, and have not been for three or four years; but he further testified that appellant did not use the tracks—the "private tracks"—named in the tariff for storing purposes, and said: "We do not intend to disturb these tracks." The lack of facilities complained of by appellant was track room.

Appellee contends that the lower court did not err be-

cause the complaint is too vague and indefinite, and, strictly construed, it could not be held to relate to anything else than the arrangements for handling the business to and from the tracks where it is to be loaded or unloaded. The part of the complaint relating to this subject is as follows: "The plaintiff also avers that in constructing the facilities at Bloomington, it has only provided sufficient facilities to accommodate its own business, and it does not have facilities sufficient to handle the business of the Indianapolis Southern Railway Company." In the absence of a motion to make the complaint more definite and certain in this particular, it is sufficient. In the second place, appellee contends that the order of the commission does not require appellant to do anything except to desist from charging the old rate, and to substitute therefor the new rate for switching; that the commission found appellant at work, and merely fixed the price of its labor, and left it at work. This statement is not accurate. The court in its finding states "that on April 28, 1909, plaintiff published and filed with the commission its terminal tariff regulating the switching of carload traffic at the junction at Bloomington, and that it at no time had, in effect, any switching charge tariff, or terminal rate, at Bloomington, whereby coal in carloads arriving at Bloomington on the Indianapolis Southern railway on its local fifty-cent rate, or on the sixty-cent rate with the Vandalia Railway Company, could be switched from the junction point at Bloomington to industries located on the line of the plaintiff company. There was no switching rate on stone. In the order of the commission, which it is here sought to vacate, the commission finds that "the rates complained of * * * are unreasonable, excessive and discriminatory; * * * that the exception, by the respondents, from such traffic, and their operation and application, of certain commodities in carloads, as shown by such tariffs, while said tariffs are

applied to all other commodities in carloads, constitutes unlawful discrimination." The order fixes a flat switching rate of $3 a car on all intrastate traffic destined to Bloomington and covering, not only that governed by the former tariff, but that not included therein, and, to that

2. extent at least, impliedly requires appellant to switch loaded cars that it had never before so moved.

In the next place, appellee maintains that appellant cannot complain because the evidence and the court's findings disclose that there are fifteen sidings and spur-tracks, of all kinds, connected with appellant's main line at Bloomington; that ten of these tracks are used for the accommodation of the industries located thereon; that the five remaining tracks, in railroad parlance, are designated as "public tracks," and are used, in whole or in part, for the receipt and delivery of carload traffic, from and to parties having no place of business on the company's line, for holding empty or loaded cars, being handled in the switching service, and as leads to its local freight house, where parcel freight is received and discharged from cars; that the only congestion existing, if any, relates to these five public tracks, and appellant's remedy, if any, is under §5206 Burns 1908, Acts 1907 p. 434, §4. The second proviso of said section is as follows: "Provided, that the Railroad Commission of Indiana, after a full hearing of all parties interested, may relieve any such carrier from so switching carload freight at terminal points, which is to be delivered upon *its public delivery tracks* at such terminal when it appears that the facilities of such carrier at such point are only sufficient to care for the business originating and terminating on its line at such point." (Our italics.) Injunctions will not be granted where there is an adequate legal remedy. Where the commission has power to grant relief, application therefor must be made to it. *Southern Ind. R. Co. v. Railroad Com., etc.* (1909), 172 Ind.

113; *Prentis* v. *Atlantic Coast Line Co.* (1908), 211 U. S. 210, 29 Sup. Ct. 69, 53 L. Ed. 150; *Texas, etc., R. Co.* v. *Abilene, etc., Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553; *Interstate Commerce Com.* v. *Illinois Cent. R. Co.* (1909), 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280.

The commission here has full power to grant relief as to the inadequacy of facilities on the public delivery tracks. Appellant has made no application to the commis

3. sion for such relief. The uncontradicted evidence does not show that appellant's facilities are insufficient for switching cars destined to industries on the private tracks, and consequently the lower court did not err in failing to make any finding in regard to lack of track facilities.

There is another reason why appellant's position is untenable, and this would apply to inadequacy of facilities as to both public and private tracks. Section 5537 Burns 1908,

4. subd. (c), Acts 1907 p. 454, §7, provides that "the commission shall have authority to grant rehearings in any case in which it has made a final order, or to alter, change or modify any final order made by it." This section vests unlimited power in the commission to vacate, alter, change or modify any order, and thus to correct its own errors, and we perceive no good reason why the courts should be appealed to, in the first instance, to grant the relief that is within the power of the commission to give.

Counsel for appellant suggest that not more than thirty days is given by the statute, from the time the order of the commission is made, in which to bring suit in the

5. courts, and in the meantime a petition for a rehearing would probably not be acted on by the commission. Section 5537, *supra*, also provides that the orders of the commission shall take effect not more than thirty days after entry thereof, "unless the same shall be suspended, or set aside, or modified by the commission," which clearly implies the power of the commission to suspend the taking

effect of the order pending a petition for rehearing or modification thereof. It follows that, before the courts have power to act, the party aggrieved must exhaust his remedies, given in the statute, by application to the commission.

Appellant's counsel earnestly contend that the order exceeds the power of the commission in this: That it requires appellant to deliver cars from junction point with the

6. Indianapolis Southern railway to consignees on appellant's public tracks; that while §5533 Burns 1908, subd. (m), Acts 1907 p. 454, §3, authorizes the commission to require railroads to receive cars and transport them from lines at junction points to a consignee "on his private track," neither such subdivision, nor any other law authorizes the commission to make an order requiring such transportation to a consignee on one of its public tracks; that the commission is of statutory creation, and if it exceeds the powers therein granted, or if it proceeds by any method other than that designated by the statute, its resultant order is void.

Section four of what is commonly known as the shippers' act (Acts 1907 p. 434, §5206 Burns 1908) provides, among other things, that "all carriers  *  *  *  shall deliver to any consignee on his private track, or track used by him for loading or unloading, *or on their public delivery track,* and shall receive from any connecting carrier, at any terminal point in this State, for the purpose of delivery to points located on its line at such terminal, or to points reached over or through its line at such terminals, all carload freight tendered to it by any such connecting line, and shall deliver the same to the consignee on its private track, or on its tracks." (Our italics.) It is provided in this section that the commission may relieve such carrier from switching carload freight to be delivered on its public delivery tracks when it appears that its facilities are inadequate. It seems to be appellant's theory, that while the law requires delivery to be made to consignees on public tracks,

the commission, while authorized to relieve the carrier from the operation of the law where facilities are inadequate, has no power to order the enforcement of the law in the absence of such contingency. Whether this view is tenable, considering only the sections of the statutes before referred to, it is unnecessary to decide, because of other provisions of the law relating to the commission. It may be stated, as a general proposition, that railroad companies must, for all services for which charges are made, file with the Railroad Commission of Indiana a tariff of rates. §5540 Burns 1908, Acts 1907 p. 454, §10. Section 5533, *supra*, authorizes the commission to supervise all railroad freight tariffs, and to adopt rules to govern the transfer and switching of cars from one road to another at junction points, and, upon the failure of the railroad companies so to do, to fix and establish joint rates of freight, transfer and switching charges, and to make new rates when necessary to prevent injustice or discrimination. Subdivision (j) of §5533, *supra*, declares that all carriers shall transfer and deliver all freight-cars, loaded or empty, tendered by a connecting line, destined to any point on their lines.

While the statute in precise terms does not authorize the commission to require a carrier to move a car from a connecting line to its public tracks, we have no doubt that such power is vested in the commission by necessary implication. Therefore the commission did not exceed its statutory power in making this order. *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439.

Appellant's next contention is that the order is void because it purports to interfere with interstate commerce. The order requires a tariff of $3 a carload, for the movement of all commodities in carload lots in the switching service. There is nothing in the order limiting its application to intrastate commerce. Before the shippers' petition was filed with the commission, appellant had filed with the commission its terminal tariff in connection with the Indianapolis

Southern Railway Company. This tariff applied to both state and interstate commerce, and was the only rate sheet controlling such services at Bloomington. In the shippers' petition, the prayer for relief was for an order requiring defendants to issue and file just and reasonable rates "for the switching of all carload traffic between their lines, and all the industries at Bloomington, Indiana, and that the respondents be required to apply said rates for two years, as required by law, to the movement of all traffic destined on either line at Bloomington, Indiana, *from points in Indiana.*" (Our italics.) The petitioners further prayed that the commission determine what are just rates for switching services in interstate traffic at that point, and recommend to respondents to apply such rate, and in case of failure to apply it, that the commission apply to the Interstate Commerce Commission for relief on behalf of petitioners.

On said petition the order was made. Of course the Railroad Commission of Indiana had no power to adjust rates for interstate traffic. Appellee contends that

7. the court is not warranted in construing the order as having such application. There is nothing in appellant's complaint, except the language of the order itself, to show that the commission or the shippers are contending for the application of the commission rates

8. tending for the application of the commission rates to interstate commerce. No doubt, on motion by appellant, the order would have been so modified by the commission as to expressly limit the rates to intrastate traffic. Such motion was not made. In *New York Cent., etc., R. Co.* v. *Interstate Commerce Com.* (1909), 168 Fed. 131, the court considered the effect of an omission of time limit in an order of the Interstate Commerce Commission. It was held that the law read the limitation into the order; that the Interstate Commerce Commission is an administrative tribunal, dealing with practical problems, and that strict rules of pleading should not be held applicable to it. Construing the order in the light of the petition, and the limits

on the power of the commission, imposed by both the federal Constitution and the statute creating the commission, we cannot construe the order as applying to interstate commerce. *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.* (1908), 171 Ind. 189; *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1910), 173 Ind. 469; *Stone* v. *Farmers Loan, etc., Co.* (1886), 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636.

Appellant asserts that the Indiana statute creating the Railroad Commission of Indiana is in conflict with article 3 of the Indiana Constitution, which divides the powers of government into three departments, and provides that no officer charged with official duties under one department shall exercise any functions of another, in that the statute makes the decision of the commission conclusive, unless set aside by the courts on complaint of the carrier; and that the effect of this is to require the courts to exercise legislative power, not only in deciding whether the rate is reasonable as an existing one, but also as a rate to govern two years in the future. Appellant specially relies on the case of *Prentis* v. *Atlantic Coast Line Co.* (1908), 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, in support of the above proposition. That case arose under the present constitution of Virginia, which is peculiar in that it unites the legislative and the judicial power in one hand, with reference to fixing railroad rates. This constitution vested in the state corporation commission both legislative and judicial power, by authorizing it to fix rates and enforce its own orders. It also provides for an appeal from the order of the commission to the state supreme court of appeals, and if that body reverses the action of the commission, it shall substitute such order as, in its opinion, should have been made. This provision clearly invests the supreme court of appeals with legislative power to fix rates.

In the case of *Prentis* v. *Atlantic Coast Line Co., supra,* the state commission had made an order fixing a rate. The

railroads, instead of appealing to the supreme court of appeals of Virginia, filed a bill in equity in the circuit court of the United States, alleging that the rate so fixed was confiscatory, and therefore was void, because in violation of rights guaranteed the carrier under the 14th amendment to the federal Constitution. The Supreme Court of the United States reversed the action of the circuit court in allowing the bill, and held that a bill would not lie until the carrier had first appealed from the order of the commission to the state supreme court of appeals. In its opinion the court said: "No rate is irrevocably fixed by the state until the matter has been laid before the body having the last word. It may be that the body will adhere to the old rate or will establish one that will not be open to the charge of violating the contracts alleged." It appears also that the Virginia commission claimed that in fixing the rate it acted judicially, and therefore that the courts of the United States were without authority to enjoin it; and that its action could be reviewed only by appeal or writ of error. The court denied this contention, saying: "But we think it equally plain that the proceedings drawn in question here are legislative in their nature, and none the less so that they have taken place with a body which at another moment, or in its principal or dominant aspect, is a court such as is meant by §720. A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts' and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind." Speaking of the character of authority exercised by the courts sitting in review of the order of the commission, the learned judge in this same case says: "The nature of the final act determines the nature of the pre-

vious inquiry. As the judge is bound to declare the law he must know or discover the facts that establish the law. So when the final act is legislative the decision which induces it cannot be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case. If a state constitution should provide for a hearing before any law should be passed, and should declare that it should be a judicial proceeding in rem and the decision binding upon all the world, it hardly is to be supposed that the simple device could make the constitutionality of the law res judicata if it subsequently should be drawn in question before a court of the United States. And all that we have said would be equally true if an appeal had been taken to the supreme court of appeals and it had confirmed the rate. Its action in doing so would not have been judicial, although the questions debated by it might have been the same that might come before it as a court, and would have been discussed and passed upon by it in the same way that it would deal with them if they arose afterwards in a case properly so called." The court also says: "Litigation cannot arise until the moment of legislation is passed."

We think counsel for appellant have misapprehended the effect of the decision in case of Prentis v. Atlantic Coast Line Co., supra. It does not follow that because the state commission and the court of appeals of Virginia, under the constitution, in fixing rates, acted in a legislative capacity, the courts of Indiana, in reviewing, where proper, the acts of our commission, exert any other than judicial power. Of course, under our Constitution, our courts may not exercise any legislative function. They cannot fix any rate, and it is not so contemplated by the statute. In determining whether a rate fixed by the commission is reasonable or confiscatory, the courts exercise no different power than they did before the enactment of the statute in controversy. Louisville, etc., R. Co. v. Wilson (1892), 132 Ind. 517, 18 L.

MAY TERM, 1911. 645

Chicago, etc., R. Co. *v.* Railroad Com., etc.—175 Ind. 630.

R. A. 105; *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439. The courts cannot inquire into the wisdom of the action of the commission, or modify its action. They will review such action, however, and if beyond the authority granted by statute, or in violation of any constitutional guaranty, strike it down. *Southern Ind. R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113; *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439. The act does not violate article 3 of the Constitution of Indiana.

Appellant asserts that the order violates its property rights saved by the 14th amendment to the Constitution of the United States, because it requires it to receive at Bloomington freight carried there by the Indianapolis Southern Railway Company, and deliver it to industries located on its public and private tracks.

Appellant claims that where its freight rates on inbound business are the same as those of its competitor, it has a right to serve the industries located on its public and private tracks at Bloomington, and a right to the earnings for such service; that it is not bound to switch loaded cars from the tracks of the Indianapolis Southern railway consigned to industries on its tracks, but that it has, by reason of the location of such industries, the right to such business, which right is a property one, and cannot be lawfully taken away. It appears from the evidence that there are twenty-eight industries located on the public and private tracks of appellant in the vicinity of Bloomington, and but one industry is similarly located on the tracks of the Indianapolis Southern railway.

Counsel for appellant rely on the case of *Louisville, etc., R. Co.* v. *Central Stock-Yards Co.* (1909), 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 441, in support of this proposition. The decree in that case required the railway company to deliver its own loaded cars to the Southern Railway Company at Louisville, to be taken to the Central stock-yards on that line for unloading.

The facts in that case were that the Bourbon stock-yards were located on the line of the Louisville and Nashville railway, and the Central stock-yards were on the line of the Southern Railway Company, at Louisville. There was physical connection between the roads. There was a station on each line at the stock-yards. The constitution of Kentucky required any carrier to switch empty or loaded cars coming to or going from any point where there is a physical connection between ' it and another line. The decree appealed from required appellant to deliver its own cars to another road, and the court held this requirement void under the 14th amendment to the federal Constitution, as an unlawful taking of property. The court based its decision on the ground that the constitution of Kentucky, under the terms of which the decree was entered, made an indiscriminative requirement of the carrier, without respect to its paramount needs, and without regulations for its protection from the loss or undue detention of cars. The court intimated however that if the Kentucky law had made proper provisions for the protection of the carrier, the action might have been sustained. The court, in the same case, held another portion of the decree invalid, which required appellant to transfer and deliver from the Central stock-yards all live stock consigned from that point to any one at the Bourbon stock-yards, because the requirement of acceptance of cars at an arbitrary point, near the terminus of a competing road, would enable the latter to get the use of costly terminals of its competitor, and thus take its property in a very effective sense.

The laws of Indiana meet the objections of the United States Supreme Court to the Kentucky constitution. Section four of the shippers' bill (Acts 1907 p. 434, §5206 Burns 1908) authorizes relief by the commission, when there is a congestion of business on the carrier's public tracks. As to outbound traffic, carriers are not required to do switching service, if they are able and willing to transport the

freight, with reasonable dispatch, at the same rate as that of the competitor. Subdivision (m) of §5533 Burns 1908, Acts 1907 p. 454, §3, fully protects the carrier in respect to return of cars; subdivision (f) of said section provides for compensation for the use of cars for over-detention. For switching service a carrier is authorized to impose and collect a "reasonable transportation charge," (§5206 Burns 1908, Acts 1907 p. 434, §4) and this would include more than the cost of labor of moving the car, and might include the element of a return on the capital invested in terminal facilities. There is no complaint in this cause that the switching rate fixed by the commission is unreasonable, and does not include the above elements. We do not believe the decision in the case of *Louisville, etc., R. Co.* v. *Central Stock-Yards Co., supra,* is applicable to the facts here. As was said before in this opinion, the court cannot consider the question of congested terminals, because relief for that must first be sought from the commission.

The claim of appellant's counsel that "we have the right to the business of these industries into Bloomington, and that no order can be enforced to take it from us so long as we are prepared to handle it at the same rates, or less than those imposed by our competitors," might commend itself to appellant's stockholders, but it is not consistent with the duties that carriers owe to shippers and the general public, and is untenable under the statutes. *Southern R. Co.* v. *Railroad Com., etc.* (1908), 42 Ind. App. 90; *Southern R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113; *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439; *Chamber of Commerce* v. *Chicago, etc., R. Co.* (1909), 15 Interstate Commerce Com. 460; *Missouri Pac. R. Co.* v. *Larrabee Flour Mills Co.* (1909), 211 U. S. 612, 29 Sup. Ct. 214; 53 L. Ed. 352. The order of the commission does not, in the particulars claimed by appellant, violate any right guaranteed it by the 14th amendment to the federal Constitution.

There is no error in the record.    Judgment affirmed.