TOWN OF MERRILLVILLE, MERRILLVILLE CONSERVANCY DISTRICT *v.* LINCOLN GARDENS UTILITIES COMPANY, INC., GARY-HOBART WATER CORP., OXFORD DEVELOPMENT CORP., AND BROADMOOR CORP.

[No. 2-573A121. Filed August 16, 1976. Rehearing denied October 22, 1976. Transfer denied March 9, 1977.]

*Fred M. Cuppy, Gerald K. Hrebec, Thomas, Burke, Dyerly & Cuppy,* of Gary, for appellants.

*Porter R. Draper,* of Tulsa, Oklahoma, *Alan E. O'Connor,* of Gary, for appellees.

### CASE SUMMARY

BUCHANAN, P.J.—Intervenors-Appellants, Merrillville Conservancy District and Town of Merrillville, seek review of a Public Service Commission order granting a certificate of territorial authority for sewage disposal service to Petitioner-Appellee, Lincoln Gardens Utilities Company, claiming the order was contrary to law because the Commission lacked jurisdiction to grant the certificate.

We reverse and remand.

### FACTS

The facts and evidence most favorable to petitioner and the Commission's decision are as follows:

Lincoln Gardens Utilities Company ("Lincoln") petitioned the Public Service Commission on July 12, 1971, for a certificate of territorial authority to render sewage disposal service in a specifically described rural area in Ross Township, Lake County, Indiana. The petition was pursuant to IC 1971, 8-1-2-89 (Burns Code Ed.), empowering the Commission to regulate the creation and expansion of rural sewage disposal services by conferring exclusive territorial rights to qualifying utilities.

The Commission held a hearing on October 22, 1971, in which Lincoln presented evidence concerning its ability to serve the proposed area. The President of Lincoln testified that to the best of his knowledge the area sought to be served was not within the territorial limits of any existing city or town.

On December 2, 1971, the Merrillville Conservancy District (MCD) and the Methodist Hospital of Gary jointly moved

the Commission for permission to intervene in the proceedings. Among other objections, MCD and the Hospital opposed Lincoln's petition because the geography sought to be served was not rural as required by statute. [IC 1971, 8-1-2-89(a) (3) (Burns Code Ed.)] They presented the Commission with a copy of an application for incorporation of the Town of Merrillville which had been filed with the Lake County Board of Commissioners on July 27, 1971, by residents of the same area which Lincoln sought to serve.

On December 30, 1971, the Lake County Board of Commissioners passed an ordinance creating the Town of Merrillville ("Town") in a geographic area coextensive with the territory Lincoln petitioned to serve.

After a series of events which are not in issue here,[1] the Town was granted permission to intervene on December 15, 1972. The Town and MCD thereafter moved to dismiss Lincoln's petition on the ground the territory sought to be served was no longer rural.

On December 15, 1972, the Commission overruled the Motion to Dismiss after an additional hearing to reconsider

---

1. On December 30, 1971, Lincoln filed with the Commission a supplemental petition deleting a portion of the area originally sought to be served which had been annexed by the City of Crown Point on July 6, 1971. Lincoln relinquished claim to this area because annexation had occurred prior to the filing of its own petition on July 12, 1971.

Many motions later, the Commission dismissed Lincoln's original and supplemental petitions on June 16, 1972, because, among other procedural irregularities, Lincoln had failed to properly verify both petitions pursuant to Commission rules. Lincoln promptly appealed to this Court for a review of the Order. (Court of Appeals #2-772-A-31; November 20, 1972.)

On November 20, 1972, the Commission and Lincoln jointly moved this Court to set aside the Order appealed from and to remand this cause to the Commission for further proceedings. This Court granted the motion and ordered the Commission's decision of June 16, 1972, vacated. The parties were left in the same position as if no Order had been issued by the Commission and no appeal had been taken from that Order.

On November 27, 1972, Lincoln filed with the Commission a properly verified supplemental petition along with a second supplemental petition deleting several large tracts of land from Lincoln's original request. All that remained after these deletions was an area roughly continguous with the city limits of the newly incorporated Town of Merrillville.

Lincoln's petitions as amended and supplemented.

On May 4, 1973, the Commission issued an Order granting Lincoln a certificate under IC 1971, 8-1-2-89 (Burns Code Ed.) to serve the same area which had been incorporated as the Town of Merrillville on December 30, 1971. In support of its Order, the Commission made the following findings of fact relating to its "jurisdiction":

1. That proper publication of the legal notice of the hearings conducted by the Commission in this Cause was given and published by the Commission as required by law.

2. That Lincoln Gardens Utilities Company, Inc. is a corporation organized and existing under the laws of the State of Indiana with corporate power and authority to owns, operate and maintain a sanitary sewage disposal system and is a public utility subject to the jurisdiction of this Commission.

3. That Petitioner is presently rendering sewage disposal service in a rural area in Lake County, Indiana, pursuant to Certificates of Territorial Authority issued by this Commission.

4. That Petitioner in this proceeding seeks a Certificate of Territorial Authority to render sanitary sewage disposal service in an area in Ross Township, Lake County, Indiana.

5. That August 30, 1971, was the date of the last publication of the legal notice of the hearing to be conducted by the Commission in this Cause on September 20, 1971.

6. That on August 30, 1971, the area for which the Petitioner seeks a Certificate of Territorial Authority was a rural as that term is defined in Chapter 313 of the Acts of 1957, Burns Ind. Stat. Ann. § 54-601c, IC 1971, 8-1-2-89.

7. That the jurisdiction of this Commission over the subject matter of this Cause, a request for a Certificate of Territorial Authority to render sewage disposal service in a rural area, was established when notice of time and place of public hearing was given more than ten days prior to the date set for hearing and the jurisdiction of this Commission continues throughout the proceedings. *City of New Haven* v. *Ind. Suburban Sewers, Inc.*, 257 Ind. 609, 277 N.E.2d 361.

8. That the Commission has jurisdiction of the parties and the subject matter of this Cause.

Town and MCD now seek judicial review of this Order.

## ISSUE

The sole issue for disposition is:

Did the Commission have the authority to grant a Certificate of Territorial Authority after the territory in question became a part of the Town, i.e., after it was no longer a "rural area"?

## PARTIES CONTENTIONS

The Town admits the area sought to be served by Lincoln was rural on July 12, 1971, when Lincoln first petitioned the Commission for Territorial Authority, and that the Commission lawfully acquired jurisdiction to consider Lincoln's petition pursuant to IC 1971, 8-1-2-89 (Burns Code Ed.), but the Town asserts the Commission subsequently lost jurisdiction when the area became a municipality on December 30, 1971. Further, it maintains the Commission is a regulatory agency which must have the power to act at the time of its decision, and therefore its finding of fact that it had jurisdiction to grant Lincoln this certificate on May 4, 1973, was completely erroneous and contrary to law.

Lincoln responds that once the Commission acquires jurisdiction upon the filing of a petition, this jurisdiction continues until the culmination of the proceedings and cannot be ousted by subsequent intervening events, even though these events are of such a character as would have prevented jurisdiction from attaching in the first instance. In addition, Lincoln characterizes the Commission and the Lake County Board of Commissioners as agencies with coordinate and concurrent jurisdiction over this disputed geographical area, thus activating the general rule that if one of two tribunals having concurrent jurisdiction has begun to exercise its jurisdiction over a case, its authority to further deal with the action becomes exclusive. Finally, Lincoln cites *City of New Haven* v. *Indiana Suburban Sewers, Inc.*, (1972), 257 Ind. 609, 277 N.E.2d 361, for the proposition that subject

matter jurisdiction is gained when notice of the hearing required by IC 1971, 8-1-2-89 (f) (Burns Code Ed.) is published; and that once this jurisdiction attaches, it continues throughout the proceedings.

## DECISION

CONCLUSION—It is our opinion that after the territory in question became a part of the Town of Merrillville, the Commission no longer possessed the authority to grant a certificate of territorial authority for sewage disposal service.

The Public Service Commission of the State of Indiana has no common law ancestry. It is exclusively a creature of the Legislature. So we turn to the applicable statutes.

The Commission's authority to grant Lincoln a certificate is predicated upon IC 1971, 8-1-2-89 (Burns Code Ed.)[2] which in relevant part states:

(b) *It is hereby declared to be in the public interest to provide for the orderly development and rendering of sewage disposal service in rural areas within the state of Indiana,* and such public interest makes it necessary and desirable that to the extent provided herein the holding of a certificate of territorial authority should be required as a condition precedent to the rendering of such service, and that such operation be under the control, regulation and supervision of the public service commission of Indiana, and such sewage disposal companies shall not be subject to regulation by any municipality or county government or metropolitan regulatory body, or any branch or subdivisions thereof or substitute therefor in the form of special service districts, with the exception that said sewage disposal company shall be subject to the comprehensive plan, zoning, and subdivision requirements and regulations of the governmental units having jurisdiction in the area; Provided, however, That all functions, powers and duties of the state board of health and the stream pollution control board shall remain unaffected by this section.

---

2. Minor amendments were made to this statute by the Acts of 1976, P.L. 25, § 1. See IC 1971, 8-1-2-89 (Burns Supp. 1976). We will cite and discuss the statute in its unamended form as it applied to the Commission's actions from 1971 to 1973.

(c) After the date that this section becomes effective [March 14, 1957], no sewage disposal company shall commence *the rendering of sewage disposal service in any rural area in the state of Indiana* in which it is not actually rendering sewage disposal service at the effective date hereof without first obtaining from the commission a certificate of territorial authority authorizing such sewage disposal service, finding that public convenience and necessity require such sewage disposal service *within such rural area* by such sewage disposal company, and defining and limiting specifically *the rural area* covered thereby. No sewage disposal company hereby required to hold such a certificate shall render any additional sewage disposal service within such *rural area* to any extent greater than that authorized by such certificate or shall continue to render sewage disposal service within such *rural area* if and after such certificate of territorial authority has been revoked or transferred as in, this section provided, unless in such order of revocation or transfer the commission shall require continued service until a new sewage disposal company or municipality actually takes over such service. The commission shall not have the power to require extension of such service by any sewage disposal company into any additional territory than that defined and limited in such a certificate without the consent of such sewage disposal company. (Emphasis added.)

The term "rural area" is specifically defined:

(a) (3) The term "rural area" means territory lying within the State of Indiana and lying outside the corporate limits of a municipality.

The Legislature enacted this statute for the express purpose of facilitating sewage disposal service in rural areas, and vested the Commission with a power to grant certificates for such service. The statute not only repeatedly refers to rural areas, but specifically defines a rural area as lying outside the corporate limits of a municipality.

Even more specifically, sub-section (f) directs the Commission to grant a certificate "after" a hearing has been held and a finding made that the area sought to be served is a "rural area": IC 1971, 8-1-2-89

(f) *If, after notice of hearing and hearing on any application for a certificate of territorial authority, the commis-*

*sion shall find from the evidence introduced at such hearing, including any evidence which the commission shall have caused to be introduced as a result of any investigation which it may have made into the matter, that the applicant has proved the following things:* (1) Lawful power and authority to apply for said certificate and to operate said proposed service; (2) financial ability to install, commence and maintain said proposed service; (3) *public convenience and necessity require the rendering of the proposed service in the proposed rural area by this particular sewage disposal company;* Provided, however, That in the event the service is proposed for a proposed rural real estate addition, division or development, or any part thereof, the reasonably expected sewage disposal service requirements of the anticipated residents may be found to constitute such public convenience and necessity; then the certificate of territorial authority, defining and limiting the rural area to be covered thereby, shall be granted to the applicant, subject to such terms, restrictions, limitations and conditions, including but not limited to a reasonable time in which to commence operations, as the commission shall determine to be necessary and desirable in the public interest. (Emphasis added.)

So the Commission must make a finding that the proposed area is rural *at the time the certificate is granted,* not at the time the application is filed.

The meaning of the pertinent sections of the statute is so plain and unambiguous we need not resort to the rules of statutory construction to arrive at this conclusion. *See Ott* v. *Johnson* (1974), 262 Ind. 548, 319 N.E.2d 622. *Indiana State Highway Commission* v. *White* (1973), 259 Ind. 690, 291 N.E. 2d 550. *State ex rel. Mental Health Commissioner* v. *Estate of Lotts* (1975), 165 Ind. App. 347, 332 N.E.2d 234.

Other parts of the statute are consistent. IC 1971, 8-1-2-89(j) contemplates the area sought to be served must be rural at the time the certificate is granted:

(j) To encourage the installation of sewage treatment plants, and sewers, mains, stations, and all other equipment and appurtenances for rendering sewage disposal service in rural areas in close proximity to municipalities, and to insure that a sewage disposal company which had made

such installation in such area can recover the cost of its investment in the event that the area or areas or any part thereof included within the territory granted under a certificate of territorial authority shall be annexed by any municipality at any time *within twelve (12) years from the date that such certificate was granted,* a sewage disposal company operating under such certificate shall continue to operate under such certificate of territorial authority, subject to the exclusive jurisdiction and regulation of the commission, for the unexpired portion of such period of twelve (12) years from the date of granting such certificate, or, in the case of a determinate permit specifying a term shorter than twelve (12) years, then for the unexpired portion of such lesser period as specified by such permit from the date of granting such permit; Provided, however, That the foregoing provisions in regard to continued operation within the corporate limits of a municipality after annexation shall not affect the right of the sewage disposal company to cease its operation of providing sewage disposal service within such annexed territory prior to the termination of said twelve (12) year or lesser determinate permit period, upon thirty (30) days written notice to the commission, the municipality, and all patrons. (Emphasis added.)

At the time the Commission made its findings of fact and rendered its decision, unchallenged evidence demonstrated the area sought to be served by Lincoln was no longer rural, having been incorporated as part of the Town on December 30, 1971, long before the final hearing of December 15, 1972, and the subsequent order of May 4, 1973. It inevitably follows that the Commission was without authority to grant Lincoln the certificate.

The source of Lincoln's conclusion that the Commission's "jurisdiction" attaches when the application is filed and continues thereafter, is the general rule applicable to courts of law that once jurisdiction is acquired it is not divested by subsequent events.[3] The analogy is not an apt one. The Public Service Commission is not a court; it is not part of the judicial branch of government.

---

3. Even this rule is not without its exceptions. See: Am. Jur.2d *Courts,* § 149-150 (1965).

"It has been frequently decided that the functions vested by the legislature in commissions, such as our Public Service Commission, are not judicial in their nature, but that they are administrative in character. *Southern Indiana R. Co.* v. *Railroad Comm., etc.* (1908), 172 Ind. 113, 87 N.E. 966; *Chicago, etc., R. Co.* v. *Railroad Comm., etc.* (1911), 175 Ind. 630, 95 N.E. 364; *Chicago, etc. R. Co.* v. *Minnesota* (1889), 134 U.S. 418, 10 Sup. Ct. 462, 33 L.Ed. 970. This being true, it follows that the proceedings before such body are not judicial proceedings, and that their orders are not judgments, but are administrative orders." *Public Service Comm.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* (1918), 188 Ind. 197, 201, 202, 121 N.E. 116, 118; *See Southern Indiana Railway Co.* v. *Railroad Commission of Indiana* (1909), 172 Ind. 113, 87 N.E. 966; *Fred J. Stewart Trucking, Inc.* v. *Bunn Trucking Co.* (1972) 151 Ind. App. 157, 278 N.E.2d 310; *Indiana Tel. Corp.* v. *Public Service Commission* (1961), 131 Ind. App. 314, 171 N.E.2d 111; *Cf. State ex rel. Indianapolis Water Co.* v. *Niblack* (1959) 240 Ind. 32, 161 N.E.2d 377.

Even more importantly, the Public Service Commission possesses only that power and authority granted to it by statute. Unlike a Court, it cannot resort to the common law for authority to act:

"When the power of the Public Service Commission comes in question it must be recognized it is a statutory board which 'derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none'." *General Telephone Co. of Indiana* v. *Public Service Commission* (1958), 238 Ind. 646, 651, 150 N.E.2d 891, 894, petition for rehearing denied; 237 Ind. 654, 154 N.E.2d 372; *Chicago & E.I.R. Co.* v. *Public Service Commission* (1943), 221 Ind. 592, 49 N.E.2d 341; *New York Central R. Co.* v. *Public Service Commission* (1922), 191 Ind. 627, 134 N.E. 282; *Monon Railroad Company* v. *Citizens of Sherwood Forest Addition* (1970), 146 Ind. App. 620, 257 N.E.2d 846; *Blue and White Service, Inc.* v. *Public Service Commission* (1965), 137 Ind. App. 112, 205 N.E.2d 552; *Sizemore* v. *Public Service Commission* (1961), 133 Ind. App. 51, 177 N.E.2d 743, rehearing denied; 178 N.E.2d 557, transfer denied; 242 Ind. 498, 180 N.E.2d 232; *Indiana Telephone Corp.* v. *Public Service Commission, supra; Boone County Rural Electric Membership Corp.* v. *Public*

*Service Commission* (1958), 129 Ind. App. 175, 155 N.E.2d 149.

When conducting a proceeding specifically described by law, the Commission must take care to exercise its power in conformity with the statute.

"Where the statute prescribes specifically how an act shall be performed by a statutory board, or prohibits its performance under certain conditions by such board, an act in direct violation thereof is absolutely void. *McNay* v. *Town of Lowell* (1908), 41 Ind. App. 627, 84 N.E. 77, and cases cited;" *Campbell* v. *Brackett* (1910), 45 Ind. App. 293, 296, 90 N.E. 777, 778. *See Meyers* v. *Evansville Water Works Dept.* (1970), 147 Ind. App. 372, 261 N.E.2d 88; *Citizens Gas & Coke Utility* v. *Sloan* (1964), 136 Ind. App. 297, 196 N.E.2d 290, rehearing denied; 136 Ind. App. 297, 197 N.E.2d 312; *Hamilton* v. *City of Indianapolis* (1946), 116 Ind. App. 342, 64 N.E.2d 303.

Lincoln cites no Indiana precedent, and we know of none, supporting its theory that an administrative agency cannot lose its capacity to act through an intervening event which supplants the Commission's initial statutory authority. Neither can Lincoln support its position that concurrent jurisdiction existed between the Commission and the Lake County Board of Commissioners, and as the Commission acted first it had the exclusive right to proceed. As we have indicated, the Commission lost its authority to act before a decision was rendered, and the Lake County Board of Commissioners has no power to grant certificates authorizing sewage disposal service (See IC 1971, 18-3-1-1 through 18-3-1-55 (Burns Code Ed.)), so no "concurrent jurisdiction" could exist in any event.

Finally, Lincoln's (and the Commission's) reliance on *City of New Haven* v. *Indiana Suburban Sewers, Inc.* (1972), 257 Ind. 609, 277 N.E.2d 361, is misplaced. The Supreme Court properly held the Commission's subject matter jurisdiction continued throughout the proceedings unaffected by lack of notice to the parties, all of whom were present at the rehearing in question. The Commission in *City of New Haven*

acquired and never lost its authority to act in the particular case pending before it unlike the case before us.

Accordingly, the Commission's order of May 4, 1973 is hereby reversed, and this case remanded for further proceedings consistent with this opinion.

Sullivan, J. and Hoffman, J., by designation, concur.

NOTE.—Reported at 351 N.E.2d 914.