**SPRING HILLS DEVELOPERS, INC., Appellant–Intervenor,**

v.

**The REYNOLDS GROUP, INC., Appellee–Petitioner.**

**No. 93A02–0209–EX–716.**

Court of Appeals of Indiana.

Aug. 8, 2003.

---

Nicholas K. Kile, P. Jason Stephenson, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellant.

Philip B. McKiernan, Steven W. Krohne, Hackman Hulett & Cracraft, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Spring Hills Developers, Inc. ("Spring Hills") appeals the decision of the Indiana Utility Regulatory Commission ("IURC") granting the petition of The Reynolds

Group, Inc. ("Reynolds") for a certificate of territorial authority ("CTA") to provide sewage disposal service in Floyd County. Spring Hills presents a single dispositive issue for our review, namely, whether the IURC erred when it granted Reynolds' petition.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In January 1999, Reynolds contracted to provide sewage service to three customers: Spring Hills, which was developing a residential subdivision; Delbert Arthur, owner of Williamsburg Station, a partially-developed commercial center; and M.E.K.A., Inc. ("M.E.K.A."), a local sewer utility. Reynolds' contract with Spring Hills and Arthur states in relevant part that Reynolds will provide service to Spring Hills at a four-year fixed rate of $38 per month. In addition, Reynolds agreed to provide service to Williamsburg Station in exchange for the right to lease a tract of land in the commercial center for $100 per year. Reynolds subsequently constructed its sewage treatment plant on that property. Both contracts were made subject to Reynolds' obtaining a CTA[1] from the IURC.

On October 1, 1999, Reynolds petitioned the IURC for a CTA. On August 28, 2000, and January 19, 2001, Reynolds filed exhibits in support of its petition. M.E.K.A. and Spring Hills then petitioned to intervene, and the IURC granted both petitions. On April 24, 2001, the IURC held an evidentiary hearing on Reynolds' petition for a CTA. After the hearing, Reynolds and the Indiana Office of Utility Consumer Counselor ("OUCC") submitted proposed orders, and M.E.K.A. and Spring Hills filed exceptions to those proposed orders.

After Reynolds moved to submit a revised proposed order, M.E.K.A. filed a response in November 2001, stating in relevant part that it "no longer need[ed] service from [Reynolds]." Then, on April 17, 2002, Spring Hills filed a "Notice of Events Subsequent to Evidentiary Hearing," informing the IURC that: (1) On March 13, 2002, Arthur filed a Complaint and Petition for Eviction, Temporary Restraining Order and Preliminary and Permanent Injunction against Reynolds in the Floyd Superior Court, alleging that Reynolds had breached its lease agreement with Arthur; and (2) On March 26, 2002, the trial court approved an Agreed Temporary Restraining Order, which prevents Reynolds from "removing, causing to be removed, or committing waste to any improvements or fixtures on Mr. Arthur's property." In the final paragraph of its "Notice," Spring Hills "request[ed] that the [IURC] take notice of the attached documents [Arthur's complaint and related court orders] and incorporate them into the Record in this Cause so that they may be considered by the [IURC] prior to the issuance of a decision in this Cause." But Spring Hills did not request that the IURC deny Reynolds' petition.

On August 8, 2002, the IURC issued its order granting Reynolds a CTA. In its findings and conclusions, the IURC found in relevant part that Reynolds had satisfied the three statutory requirements for a CTA. Spring Hills did not petition the IURC for rehearing or request leave to submit additional evidence at any time fol-

---

1. A CTA is a "condition precedent" to providing sewage service. *See* Ind.Code § 8–1–2–89(b).

lowing the evidentiary hearing. This appeal ensued.

## DISCUSSION AND DECISION

■ This court's review of IURC decisions is two-tiered. We first determine whether specific findings have been made on all factual determinations material to the ultimate conclusions, and we inquire if substantial evidence exists within the record as a whole to support the IURC's basic findings of fact. *Indiana Office of Util. Consumer Counselor v. Lincoln Utils., Inc.,* 784 N.E.2d 1072, 1074 (Ind.Ct. App.2003). In determining whether the evidence supports the IURC's decision, we neither reweigh the evidence nor substitute our judgment for that of the IURC. *Id.* We set aside the IURC's findings of fact only when a review of the entire record clearly indicates that its decision lacks a reasonably sound basis of evidentiary support. *Id.*

The IURC found in relevant part that: Petitioner is seeking a CTA pursuant to Ind.Code § 8–1–2–89, and 170 IAC 8.5–3–1, et seq. Ind.Code § 8–1–2–89(e), requires the Commission to review the evidence and determine whether Petitioner has established:

A. That Petitioner has lawful power and authority to apply for the certificate and to operate the proposed service;

B. That Petitioner has the financial ability to install, commence, and maintain the proposed service; and

C. That public convenience and necessity requires the rendering of this proposed service in this rural area by this particular sewage disposal company.

Applying these requirements to the evidence in this Cause, we find:

**a. Legal Power and Authority to Apply for CTA.**

Petitioner has verified that it is a corporation organized under the laws of the state of Indiana with its principal office at 1601 Greentree Court, Clarksville, Clark County, Indiana 47129. Petitioner further verified that it has charter power and authority to engage in operating a sewage disposal service in rural areas of Indiana. We find that Petitioner has the requisite power and authority to operate a sewage disposal system in Floyd County, Indiana.

**b. Financial Ability.**

As the case with all start-up utilities, Petitioner is expecting to have negative net operating income (NOI) in the first few years of operation. Petitioner's five-year feasibility study, Exhibit K, indicates that Petitioner expects to have a positive NOI at the end of its fourth year of operation although, we note, that its proposed rates are not based on actual costs of service.

Petitioner's parent company has submitted a financial guarantee of Petitioner's operations.[2] We find that Petitioner has the requisite financial ability to operate under the requested CTA, subject to conditions imposed by this Order.

**c. Public Convenience and Necessity.**

The evidence presented shows the successors in interest to [Spring Hills] will require sewage disposal service. There is currently no treatment plant serving the area [Spring Hills] pro-

---

**2.** Reynolds' parent company, AquaSource, promised to provide working capital as needed, as well as to provide service to Reynolds' customers, if necessary, for the first five years of Reynolds' service.

poses to develop. Moreover, commercial customers located at Williamsburg Station are currently served by a septic mound system that will be removed upon connecting to Petitioner's system. Based on the evidence presented and subject to the limitations and conditions imposed by this order, we find the public convenience and necessity requires the rendering of the proposed service in the CTA area by Petitioner.

Based on the evidence of record, we find that Petitioner has met the requirements of IC 8–1–2–89(e), subject to its fulfillment of conditions set out below.

Spring Hills contends that the IURC was required to "make its ... findings based upon facts as they exist[ed] at the time of issuing its order." Specifically, Spring Hills maintains that when it ruled on Reynolds' petition, the IURC should have "considered" both that Reynolds had lost M.E.K.A.'s business and that Reynolds' contract with Arthur was in litigation. Spring Hills asserts that without M.E.K.A.'s business, Reynolds cannot show that it will ever make a profit and, therefore, lacks the financial ability to provide the proposed service. And Spring Hills contends that the litigation between Arthur and Reynolds could result in Reynolds' loss of use of the sewage treatment plant it constructed on the leased property, leaving Reynolds unable to provide the proposed service. In sum, Spring Hills contends that those events, which occurred after the hearing on Reynolds' petition but before the IURC issued its order, made Reynolds ineligible for the CTA as a matter of law.

■ But Spring Hills did not oppose Reynolds' petition before the IURC. In its Post-hearing Brief and Exceptions to Proposed Orders, Spring Hills requested that the IURC "grant [the CTA] in its *entirety*, without modification." (Emphasis original). And in its only other filing submitted to the IURC, the "Notice of Events Subsequent to Evidentiary Hearing," Spring Hills merely requested that the IURC "take notice of" and "consider" the pending litigation between Arthur and Reynolds "prior to the issuance of a decision in this Cause." Finally, according to the IURC's final order, while Spring Hills appeared by counsel at the evidentiary hearing, it did not present any evidence. Thus, for the first time on appeal, Spring Hills contends that the IURC should have denied Reynolds' petition for a CTA.

■ Following the evidentiary hearing on April 24, 2001, Spring Hills had ample opportunity to request that the IURC deny Reynolds' petition. Pursuant to Title 170, Indiana Administrative Code, Rule 1–1–20, Spring Hills could have petitioned the IURC for further hearing and for leave to submit additional evidence *before* the IURC entered its order on August 8, 2002. While Spring Hills now contends that Reynolds' loss of M.E.K.A.'s business and the pending litigation with Arthur rendered Reynolds unable to provide the proposed sewage service, Spring Hills did not make that argument or tender additional evidence to the IURC. Likewise, M.E.K.A.'s "Response to Motion to Submit Revised Proposed Order" was not evidence that Reynolds had lost M.E.K.A.'s business.[3] As we have already noted, Spring Hills did not seek further hearing or re-

---

3. As a general rule, averments in pleadings are considered self-serving declarations and as such are not admissible evidence. *State v. Cleland*, 477 N.E.2d 537, 538 (Ind.1985). Here, M.E.K.A. merely advised the IURC that it "no longer need[ed] service from [Reynolds]" in an unverified filing submitted on November 5, 2001. As such, that fact was never submitted as evidence to the IURC.

quest leave to submit additional evidence. It merely asked the IURC "to consider" the allegations contained in its "Notice." We conclude that Spring Hills has waived the errors it now asserts on appeal.

■ Waiver notwithstanding, we address Spring Hills' contention that the IURC should have investigated and considered the post-hearing events. Indiana Code Section 8–1–2–89(e) provides:

If, after notice of hearing and hearing on any application for a certificate of territorial authority, *the commission shall find from the evidence introduced at such hearing, including any evidence which the commission shall have caused to be introduced as a result of any investigation which it may have made into the matter,* that the applicant has proved:

(1) lawful power and authority to apply for said certificate and to operate said proposed service;

(2) financial ability to install, commence, and maintain said proposed service; and

(3) public convenience and necessity require the rendering of the proposed service in the proposed rural area by this particular sewage disposal company; however, in the event the service is proposed for a proposed rural real estate addition, division, or development, or any part thereof, the reasonably expected sewage disposal service requirements of the anticipated residents may be found to constitute such public convenience and necessity;

then the certificate of territorial authority, defining and limiting the rural area to be covered thereby, shall be granted to the applicant, subject to such terms, restrictions, limitations, and conditions, including but not limited to a reasonable time in which to commence operations, as the commission shall determine to be

necessary and desirable in the public interest.

(Emphasis added).

Specifically, Spring Hills contends that the IURC had a statutory duty to investigate and consider Reynolds' loss of M.E.K.A.'s business and its litigation with Arthur over the lease agreement because, Spring Hills maintains, those events affect both Reynolds' financial ability to install and maintain its proposed sewage service and the public convenience and necessity for that service. In support of those contentions, Spring Hills relies on this court's opinion in *Town of Merrillville v. Lincoln Gardens Utils. Co., Inc.*, 170 Ind.App. 245, 351 N.E.2d 914 (1976).

In *Town of Merrillville,* a utility company petitioned for a CTA under Indiana Code Section 8–1–2–89, which applies to sewage service in rural areas. At the time of the hearing on the petition, the proposed area of service was classified as "rural," but before the IURC had ruled on the petition, the proposed area was incorporated into the Town of Merrillville. The Town intervened and moved to dismiss the utility company's petition on the basis that the IURC no longer had subject matter jurisdiction, but the IURC denied the motion and granted the CTA. The IURC found in relevant part that "the subject matter of this Cause ... was established when notice of time and place of public hearing was given ... and the jurisdiction of this Commission continues throughout the proceedings." *Id.*

On appeal, this court held that under Indiana Code Section 8–1–2–89, the IURC "must make a finding that the proposed area is rural at the time the certificate is granted, not at the time the application is filed." *Id.* at 918. And we noted that "[a]t the time the Commission made its findings of fact and rendered its decision, unchallenged evidence demonstrated the area sought to be served by Lincoln was no

longer rural...." *Id.* at 919. Thus, we reversed the IURC's grant of the CTA.

Spring Hills interprets our holding in *Town of Merrillville* to mean that the IURC must always consider "the facts as they exist at the time the CTA is granted." In *Town of Merrillville*, we noted that "[t]he meaning of the pertinent sections of the statute is so plain and unambiguous we need not resort to the rules of statutory construction to arrive at this conclusion." *Id.* at 918. Those sections include only references to rural areas, and we observed that the express legislative purpose of Indiana Code Section 8–1–2–89 is to facilitate sewage disposal service *in rural areas. See id.* Thus, because the proposed territory was no longer rural, the IURC had no basis to grant the CTA as a matter of law.

Here, we also look to the plain and unambiguous meaning of Indiana Code Section 8–1–2–89(e) concerning the evidence the IURC is required to consider in ruling on a petition for a CTA. The statute clearly states that the IURC shall base its findings on "the evidence introduced *at* ... [the] hearing,* including any evidence which the commission shall have caused to be introduced as a result of any investigation which it *may have made* into the matter...." *Id.* (emphases added). Thus, here, the IURC was not required to look at any evidence other than that introduced at the hearing. And, contrary to Spring Hills' assertion, the IURC was not *re-quired* to investigate either M.E.K.A.'s assertion that it had terminated its contract with Reynolds or the facts alleged in Spring Hills' post-hearing "Notice." [4]

■ Our holding in *Town of Merrillville* requires the IURC to find, at the time of its ruling on a petition for a CTA, that the proposed service area is rural. But that finding bears directly on the IURC's jurisdiction to issue the CTA. Here, the facts that Spring Hills contends the IURC should have considered would not affect the IURC's jurisdiction. Instead, those facts concern whether Reynolds has the financial ability to provide the proposed sewage service and whether public convenience and necessity require the service. When considering such questions the IURC must weigh the evidence, which the IURC did when it made its findings and conclusions. The "Notice" and attached exhibits filed by Spring Hills were not evidence and added nothing to the record. *See State v. Cleland,* 477 N.E.2d 537, 538 (Ind.1985) (stating general rule that averments in pleadings are not admissible evidence). The bare allegations in the "Notice" were not facts which, without more, the IURC could have relied upon to deny the petition. We decline Spring Hills' invitation to apply our holding in *Town of Merrillville* here. [5]

### Conclusion

In sum, we conclude that Spring Hills did not oppose Reynolds' petition before

---

4. Spring Hills also relies on the United States Supreme Court's opinion in *Motor Vehicle Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), in support of its assertion that the IURC should have investigated the post-hearing events. In that case, the supreme court held that the National Highway Traffic Safety Administration ("NHTSA") erred when it failed to "bring its expertise to bear on a question" of whether to mandate so-called "passive restraint systems" in automobiles. *Id.* at 54, 103 S.Ct. 2856. Spring Hills con-

tends that likewise, here, the IURC should have brought its expertise to bear on the question of whether the post-hearing events undermined Reynolds' ability to provide sewage service. But, again, given the plain meaning of Indiana Code Section 8–1–2–89(e), we hold that any investigation is at the IURC's discretion.

5. In its findings, the IURC made references to both Reynolds' loss of M.E.K.A.'s business and the pending litigation between Arthur and Reynolds. But any question concerning

the IURC and, hence, waived any claim of error on appeal. In addition, Spring Hills has maintained inconsistent positions regarding whether the IURC should have considered post-hearing events. *See Gregory and Appel, Inc. v. Duck,* 459 N.E.2d 46, 50 (Ind.Ct.App.1984) (stating rule that party may not generally assume successive positions in the course of same litigation with respect to same facts which are inconsistent and mutually contradictory). In its Brief of Appellant, Spring Hills maintains that the IURC was required to investigate and consider post-hearing events when it ruled on Reynolds' petition. But in its reply brief, Spring Hills asserts, for the first time, that the IURC could not have properly considered those events because they were not admitted into evidence. Reply Brief at 7. Waiver notwithstanding, we conclude that the IURC was not required to consider post-hearing events not in evidence in determining Reynolds' eligibility for a CTA.

Affirmed.

BROOK, C.J., and BAILEY, J., concur.

whether the IURC erred when it considered those facts is not properly before this court, so we need not address that issue. *See, e.g., Indiana Office of Util. Consumer Counselor v. Lincoln Utils., Inc.,* 784 N.E.2d 1072, 1076 (Ind.Ct.App.2003) (holding IURC's reliance on study not admitted into evidence error). Curiously, for the first time in its reply brief, Spring Hills contends that "the manner in which the Commission 'considered' these events, if at all, was contrary to law[,]" citing to *Lincoln Utils., Inc.* That contention directly contradicts the argument Spring Hills presents in its Brief of Appellant, namely, that the IURC "failed" to consider those events. And a party cannot raise an issue for the first time in a reply brief. *See French v. State,* 778 N.E.2d 816, 826 (Ind.2002). As such, the issue is waived. We note, however, that none of the IURC's findings are based solely on those post-hearing events.

And we need not address Spring Hills' contention that the IURC's findings are not sufficiently specific because it "fail[ed] to make any findings regarding the impact of Reynolds' changed circumstances." Because we hold that the IURC was not required to consider the post-hearing events under Indiana Code Section 8–1–2–89(e), it follows that the IURC was not required to make findings on those events.